NATHAN WOOD v. THE RUTLAND AND ADDISON MUTUAL FIRE
INSURANCE COMPANY.*

*Fire Insurance.*

A mercantile firm, whose articles of co-partnership provided that, in the event
of a dissolution, one of the firm should have the right to take the partner-
ship property himself, upon paying the other partner therefor, procured a
policy of fire insurance in their firm name upon their stock of goods, but
this agreement between the partners was not incorporated in the policy, nor
even made known to the insurers. One of the firm dying during the life of
the policy, the other partner, in pursuance of this agreement, took the prop-
erty, added to the stock by purchase, and continued the business in his own
name, and while so doing his stock of goods was destroyed by fire; *Held*,
that though he might, as surviving partner, maintain an action in his own
name against the insurers for the loss of the goods of the firm destroyed by
the fire, he could not, independent of a new agreement with the insurers
subsequent to his partner's death, recover upon the policy for the goods
purchased after that event.

But *held*, that if the insurers after the death of one partner, on being informed
that the other was continuing the business on his own account, agreed, even
verbally, that the policy should inure to the latter individually, and he relied
on this agreement, and paid subsequent assessments laid against him upon
the policy by the insurers, this constituted such a ratification of the policy
to him as would enable him to recover of the insurers in his own name the
loss upon all his goods, whether owned originally by the firm or purchased
by him after its dissolution.

*Held*, therefore, in an action by the surviving partner against the insurers,
declaring upon the policy as originally issued, and setting forth such a con-
firmation of it to him, that it was error in the court below to exclude from
the jury parol evidence tending to show that upon his partner's death the
plaintiff applied to an agent of the insurers to know if any step on his
part or any change in the policy was necessary to make it available to him
upon his own goods, and that the agent informed him that there was not,
and agreed that the policy should inure to him individually; and that this
agreement was made known to the defendants' directors, and that they
assented thereto and treated the policy as continuing in force to the plaintiff
individually, and laid and collected assessments thereon against him until
the occurrence of the loss.

*Held*, also, that whether the agent had or had not authority to make such an
agreement, such knowledge of it by the defendant's directors, and such
action on their part, constituted a ratification of the policy to the plaintiff
by the defendants.

* This cause was decided at the General Term, at Burlington, in July, 1858,
but the papers were not furnished to the reporter in season to be printed with
the cases of that term. REPORTER.

Wood *v.* Rutland and Addison Mutual Fire Insurance Company.

ASSUMPSIT upon a policy of fire insurance. The declaration set forth in substance that the plaintiff and one Johnson being partners in trade, on the 13th of August, 1851, procured from the defendants a policy of insurance against loss or damage by fire to the amount of twenty-five hundred dollars on goods in their store, and five hundred dollars on produce in their store and mill adjoining, for six years from that date, and gave the defendants their premium note for three hundred and sixty dollars, and paid them ten dollars and eighty cents, and agreed and became liable to pay such assessments on such premium note as should be laid by the defendants during the life of said policy; that by the terms of co-partnership between the plaintiff and Johnson, it was agreed between them that in the event of the dissolution thereof, the property of the firm should become the plaintiff's property at a certain price to be paid to Johnson therefor; that on the 5th of June, 1852, Johnson died, and that in consequence thereof, and under this agreement, the plaintiff became the sole owner of said property, and continued the same business on his own account in the same store and mill; that immediately after Johnson's death the plaintiff notified the defendants thereof, and applied to them to permit him to have all the benefit of said policy the same as though he had originally been the sole owner of the property insured, and the policy had issued to him alone; that thereupon, in consideration that the plaintiff agreed to pay the assessments on said policy and premium note, the defendants promised the plaintiff that the policy should inure to his benefit, and stand as a policy to him for the insurance of his sole property of the same kind, and kept in the same place, as the goods originally insured thereby to Wood & Johnson; and that the plaintiff, relying on this agreement, did from time to time pay all assessments made by the defendants on the policy and premium note; that the same kind of business was thenceforward carried on, and the same kind of goods kept in the same store and mill by the plaintiff until the 8th of September, 1854, when without any fault on the part of the plaintiff, the said store and mill were destroyed by fire, and goods in the store, and produce in the store and mill to the value of three thousand five hunded and fifty-six dollars and forty-six cents were consumed thereby; and that the

defendants had notice thereof, according to the requirements of the policy, but had refused to pay the plaintiff the said loss or any part thereof.

To this declaration the defendants pleaded the general issue, and the cause was tried by jury, at the December Term, 1857,—BENNETT, J., presiding.

On trial the plaintiff introduced in evidence the policy declared upon, and the application of Wood & Johnson, on which it was issued. The policy was issued to Wood & Johnson, and the charter and by-laws of the defendants were printed thereon, and referred to in the policy. The only clause in the charter and by-laws, which was claimed to have any bearing upon the questions at issue in this case, was the twelfth article of the charter, which provided that when any house or other building should be alienated, the policy should be void and be surrended to the directors to be cancelled, provided that the grantee or alienee, having the policy assigned to him, might have the same ratified and confirmed to him upon application to the directors, and with their consent, within thirty days next after such alienation, on giving proper security to the satisfaction of the directors for such portion of the premium note as should remain unpaid; and that by such ratification and confirmation, the alienee should be entitled to all the rights and privileges, and become subject to all the liabilities to which the original party insured was entitled and subjected under the charter.

The plaintiff introduced evidence tending to prove a loss by fire of the property insured on the 7th of September, 1854, to the amount set forth in the declaration.

It was agreed by the parties that at the time the policy was issued the plaintiff and Johnson were partners in trade, under an agreement providing, among other things, that in case of dissolution the plaintiff might take the whole of the goods and hold them solely in his own right upon paying to Johnson a specified price therefor; that the partnership continued until the death of Johnson, which took place in June, 1852; that after his death the plaintiff claimed under their partnership agreement the right to take the goods, and carry on the business by paying Johnson's estate the stipulated price thereof; that Johnson's administrators

assented thereto, and the plaintiff did take and pay for the goods accordingly, and continued the same business in the same place, and in the same manner as before Johnson's death, purchasing new goods and selling the stock until the loss occurred, and that he was guilty of no fault in connection with the loss.

The plaintiff also introduced evidence tending to prove the amount of the goods lost which were a part of the original stock on hand at the time of Johnson's death, and also proved that the defendants continued to lay assessments upon the policy in suit after Johnson's death, as in other policies issued by them and then in force, and that these assessments were demanded of and paid by the plaintiff from that time until the loss occurred.

The plaintiff offered testimony tending to prove that from the date of the policy in question, until after the occurrence of the loss, Dorastus Wooster was the general agent of the defendants in the town of Middlebury, where the store of Wood & Johnson was situated, and was authorized to do all acts in the prosecution of the defendants' business, which under their charter could legally be entrusted to an agent, and that he made the application, obtained and delivered the policy and collected the premiums in the case of the policy declared on; that immediately after Johnson's death the plaintiff inquired of Wooster, as such agent, whether any change in the form of the policy, or a new policy, or any other step would be necessary to make the policy valid and available to the plaintiff, during the remainder of the time for which it was issued, upon the goods held or purchased by him in the future prosecution of the business; that Wooster, as such agent, informed the plaintiff that no change in the policy, or further action on his part in respect thereto, was necessary, and agreed that the policy should apply as the plaintiff requested; that the directors of the defendants, with notice of Johnson's death and that the plaintiff was continuing the business on his own account, assented to this understanding and agreement, treated the policy as continuing in force as the plaintiff requested, made assessments regularly upon it, and collected them of the plaintiff until the loss in question occurred; and also that they in writing authorized the plaintiff to obtain further insurance upon the same property in another company.

To the admission of this testimony the defendants objected, and it was excluded by the court, to which the plaintiff excepted.

Under the instructions of the court the jury returned a special verdict finding the amount of the plaintiff's loss by the fire in question on the goods in the store, and the produce in the store and mill, and the proportion of such loss upon the goods which belonged to Wood & Johnson, and were on hand at the time of the latter's death.

The county court *pro forma* rendered judgment for the defendants, to which the plaintiff excepted.

*Charles Linsley* and *E. J. Phelps*, for the plaintiff.

I. The plaintiff is entitled to judgment on the verdict, for the entire loss sustained.

1. The insurance was to Nathan Wood & Co., as partners, not upon specific property, but upon such goods as might at any time be in the store within six years. · The legal effect of this was to insure the members of that firm, to the extent of their interest in such goods under the articles of partnership, whatever, and however divided, that interest might be.   And the policy is therefore to be taken as contemplating such change of *relative* interest, not material to the risk, as the articles provided for, as fully as though the terms of these articles had been set forth in the policy as defining the title under which the insured property was held.

By the agreement of partnership it was provided that in the event of dissolution, the goods and business should belong to the plaintiff, upon his paying a certain amount.   His interest in the goods, therefore, at the time of the insurance, was one-half, with the reversion of the other half upon a specified contingency. And at the time of the loss, the contemplated contingency having occurred, his interest had become the whole; and the right of action on the policy had vested in him, not only as surviving partner, in whose name alone suit could be brought, but as the sole party in interest, and entitled to the benefit of the insurance.

This is not at all the case of a change of title in the insured property, by contract or otherwise, subsequent to the insurance. It is a mere variation in the *relative* interest of the joint owners, arising without any new contract, in pursuance of the provisions

of the very title specified in the policy. The risk is not affected in the slightest degree. No new party is introduced; the custody and situation of the property, the business and all circumstances remain precisely the same; *DeForest* v. *Fulton Ins. Co.*, 1 Hall 84; *Tillou* v. *Kingston Ins. Co.*, 7 Barb. 570; *Ætna Fire Ins. Co.* v. *Tyler*, 11 Wend. 385.

2. Even if the change of relative interest between these parties, could be regarded as not contemplated or provided for in the title under which the goods were insured, but as arising under an independent and subsequent contract, the plaintiff would still be entitled to recover.

It is well settled that the interest of the insured need not remain the same from the time of the insurance to the time of the loss, in order to keep the policy in force. If he have an interest when insured and an interest when the loss occurs, it is sufficient, though that interest may have materially varied, and even ceased altogether in the intermediate period, and may be entirely different at the time of the loss from what it was when the risk commenced; 1 Phillips on Ins. sec. 88; *Kingsley* v. *New Eng. M. Ins. Co.*, 8 Cush. 393; *Reed* v. *Cole*, 3 Burrow 1512; *Carroll* v. *Mer. Ins. Co.*, 8 Mass. 515; *Law* v. *Maine Mut. Fire Ins. Co.*, 3 Fairfield 44; *Gardner* v. *Mass. F. & M. Ins. Co.*, 2 Pick. 249; *Jackson* v. *same*, 23 Pick. 418; *Lazarus* v. *Com. Ins. Co.*, 5 Pick. 76, and 19 *id.* 81; *Strong* v. *Manufacturers' Ins. Co.*, 10 Pick. 40; *Goodall* v. *New Eng. Mut. Fire Ins. Co.*, 5 Foster (N. H.) 169; *DeForest* v. *Fulton Ins. Co.*, above cited; *Wilson* v. *Gen. Mut. Fire Ins. Co.*, 16 Barb. 511.

The principle of all these cases is, that a mere variation in the character and amount of the interest, not material to the risk, and introducing no new party to the contract, never precludes a recovery. Where the risk is varied the policy is discharged. Where it is not, the contract is regarded as one of indemnity, and is liberally construed for the benefit of the insured.

The law of insurance is pervaded by an elevated morality, without the exercise of which, on both sides, this species of contract could not for a moment be sustained.

Even had Johnson's interest in the insured property been transferred by transactions subsequent to the insurance, to a stranger,

the plaintiff would, notwithstanding, be entitled to recover for his own share.    The policy would not have been avoided.

If, then, the policy is not in any view void, and the interest is not out of the insured, and the action must be brought in the name of the plaintiff alone, it is difficult to see why he may not and ought not to recover to the extent of his loss.

II. If there could be a doubt as to the plaintiff's right to recover on the facts in the case, the additional evidence offered by him should have been admitted, and if true, would have been decisive.    And a new trial should therefore be granted.

1. It was admissible as showing notice of the transfer to the plaintiff from his partners, and the assent of the defendants thereto.

A policy of insurance may always be transferred with the goods, with the assent of the insurers.    The transfer may be by parol, by mere delivery, if no provision of the policy requires it to be in writing; 1 Phillips on Ins. sec. 88 and inf.; *N. E. F. I. Co.* v. *DeWolf*, 8 Pick. 56; *Goodal* v. *New Eng. Mut. Fire Ins. Co.*, 5 Foster (N. H.) 169.

And the assent of the company may also be shown by parol, in the absence of an express provision to the contrary; *Tillou* v. *Kingston Mut. Ins. Co.*, 7 Barb. 570.

It was proposed to show full notice to the general agent and also to the directors, that Johnson was dead and Wood was continuing the business on his own account, and desired an application of the policy accordingly; that to this both the agent and directors assented, and assured the plaintiff that no other step would be necessary to keep the policy in force; and that the plaintiff acted upon this assent and assurance, and the defendants treated the policy as continuing, and collected the premiums thereon up to the time of the loss.

If this amounted to a transfer of the property, it was also a transfer of the policy of insurance, which under the partnership agreement passed to the plaintiff with the goods, and with the assent of the administrator of Johnson; and was a clear assent of the company to the transfer, which would continue their liability upon it in favor of the plaintiff.

The sanction of the directors required no formal vote to give

it effect, and may be inferred from circumstances; Angell and Ames on Corp. sec. 302; *Ridgway* v. *Farmer's Bank*, 12 Serg. & R. 256; *Lightbody* v. *North Am. Ins. Co.*, 23 Wend. 18; *McEwen* v. *Montgomery Co. Mut. Ins. Co.*, 5 Hill 101.

And the mere recognition of the policy as continuing, and the collection of premiums thereon accordingly, is sufficient to bind the corporation; *Vial* v. *Gen. Mut. Ins. Co.*, 19 Barb. 444.

This is not the case of a new insurance by parol. But even this if shown to have been made and acted on, would be binding upon the parties, inasmuch as there is nothing in the defendants' charter to the contrary; 1 Phil. Ins. § § 80, 81, 83, 84; Angell on Ins. sec. 19; *Sandford* v. *Trust F. I. Co.*, 11 Paige 547; *Smith* v. *Arlin*, 4 Yeates 468; *McCulloch* v. *Eagle Ins. Co.*, 1 Pick. 278; *Tayloe* v. *Mer. Fire Ins. Co.*, 9 How. 390.

2. The evidence was likewise admissible, as showing an independent and valid contract by the defendants, in reference to the policy, that it should be treated as applicable to the plaintiff's entire interest in the goods, and be mutually available accordingly. This the evidence offered would fully prove.

And such a contract would be valid if made and acted on by the parties, and the consideration received by the defendants was sufficient to sustain it, there being nothing in the · charter or the policy to prevent it; *Goodall* v. *New Eng. M. F. I. Co.*, above cited; *Peck* v. *New Lon. Co. Mut. Ins. Co.*, 22 Conn. 575.

Having assented to this application of the policy, and thus induced the plaintiff to rely upon it, and having received from time to time the consideration on their part, and recognized the contract as valid and subsisting, they are now precluded and estopped from denying its validity.

3. The evidence was further admissible, as proving a waiver by the defendants of any objection to the policy arising from the death of Johnson, and an admission as to its continued application to the plaintiff's interest, which having been acted on by the plaintiff, as well as by themselves, they are now estopped from denying or repudiating.

*Briggs & Nicholson*, for the defendants.

I. An insurance is a contract *inter partes*, and the contract is

not assignable without the consent and approval of the insurance company.

An insurance made to N. Wood & A. Johnson, is not an insurance to N. Wood on his separate property.

When two parties effect an insurance against fire on their joint property, and before a loss occurs one of them conveys to the other, after which the property is destroyed, the parties insured can not in an action in their joint names recover any portion of the loss, they having no joint interest at the time of the loss ; *Howard* v. *Albany Ins. Co.*, 3 Denio 301. Changing the parties would not obviate the difficulty.

Only the parties in interest at the time the policy was made, and at the time of the loss, can recover; *Rider* v. *Ocean Ins. Co.*, 20 Pick. 259 ; *Bodle* v. *Chenango Co. Ins. Co.*, 2 Comst. 53 ; *Murdock* v. *Chenango Co. Ins. Co.*, 2 Comst. 210 ; *Tillou* v. *Kingston Ins. Co.*, 1 Selden 405 ; *Peters* v. *Davis*, 7 Mass. 259 ; 1 Chitty's Plead. 11, 19.

II. The contract set up by the plaintiff upon the dissolution of the co-partnership, that Wood was to be the sole owner of the partnership property, does not enable the plaintiff to maintain this action. No statement of this agreement was made to the defendants in the application upon which the policy was issued.

In making the contract of insurance, the insurance company had no knowedge as to the situation or title of the property insured, except the written application of the insured, which by the terms of the insurance is a part of the contract, and makes the representations therein material and binding on the insured as to title in the property.

III. The dissolution of the partnership does not enable Wood to sustain the suit in his own name.

The death of one of the partners is *ipso facto* a dissolution of the partnership, and without the agreement in the articles of co-partnership the property would belong to Wood and the administrator of Johnson; Collyer on Part, secs. 113, and notes, 123, 129.

The dissolution of the partnership by the death of one of the partners discontinues the business of the partnership and the insurance upon the goods then existing ; the surviving partner is

to settle the affairs and is entitled to possession and disposition of the assets to settle the concern; 3 Kent's Com. 63.

If there had been no transfer of the property, the insurance would have been good to Wood and the representative of Johnson.

IV. A contract of insurance can not be created by parol, nor can an assignment be made by parol; 3 Steph. N. P. 2083.

Upon a change of title in the property the policy becomes void, unless assigned under the provisions of the 12th section of the act of incorporation, and art. 7, sec. 2, of the by-laws.

1. The assent of the directors must be had to make an assignment valid.

Policies against fire are personal contracts, and do not pass to the purchaser of the property or his assignee without the consent of the underwriter; Ætna Ins. Co. v. Tyler, 16 Wend. 395.

2. The assent of the agent to this assignment is not valid. He had no authority to give any such assent; art. 3, sec. 4, By-Laws.

V. Notice of the death of Johnson to the insurance company could have no effect. This did not convey notice, either express or implied, that Johnson's joint interest in the property did not remain in his representative.

It is not pretended that any notice was given to the company that the joint interest of Johnson had been transferred to Wood.

Of the same character is the payment of assessments. These were not made in consideration of continuing in force the policy to Wood, but upon the ground that Wood and Johnson or his representative had a joint interest in the goods insured.

The collection of assessments after an alienation of the property and knowledge of the company that the policy was void, did not revive the policy, but was consistent with the company's right to treat it as void; Neely v. Onondaga Ins. Co., 7 Hill 49; Smith v. Saratoga Co. Mut. Fire Ins. Co., 3 Hill 508.

VI. The whole stock of goods (with the exception of a few articles) had been changed after the death of Johnson, and were purchased as the sole property of Wood, and were in fact his goods; there had never been any joint interest in these goods with Johnson.

Then how can an insurance made to Wood & Johnson in the

37

lifetime of Johnson, on the joint property of Wood & Johnson, be shaped to cover these goods belonging to Wood?

ALDIS, J.   Nathan Wood and Austin Johnson were partners under the firm of N. Wood & Co.   By their articles of partnership Wood had the right, upon a dissolution of their partnership, to take the goods, pay Johnson for them and carry on the business.

On the 13th of August, 1851, the defendants executed to N. Wood & Co. a policy insuring them for six years, five hundred dollars upon grain, and twenty-five hundred dollars upon goods that might be in their store during that time.   The agreement as to Wood's right upon dissolution to buy the goods and continue the business was not stated in the application, nor made known to the defendants.

In June, 1852, Johnson died, and Wood thereupon, according to the right reserved to him in the articles of partnership, bought all the interest which Johnson's estate had in the goods, and carried on the business in his own name, and thereafter bought goods on his sole account.   The business was carried on in the same store, and in the same way by Wood, that it had been by N. Wood & Co.

In September, 1854, the store was burned, and there was a loss upon the goods of about three thousand dollars.   All of these goods, except about three hundred dollars worth, had been purchased by Wood after the decease of Johnson.

The plaintiff insists that he can recover in this action for the loss of these subsequently purchased goods.

I. He claims this right independent of any assent or agreement by the defendants to be liable to him, and to confirm and ratify the policy to him as assignee and purchaser.   He puts his right upon the ground, that by the parnership articles he had the right upon the decease of Johnson to buy the goods and carry on the business alone ; that he did so, making no change that could vary or increase the risk ; that the change was but a variation of relative interest, increasing the share of one partner and diminishing that of the other.

Upon the death of Johnson the plaintiff, as surviving partner, became vested with the legal title to the goods of the firm insured

by the policy, and was by operation of law the legal assignee of the policy. In case of loss he alone could sue for a breach of the contract of insurance. So long as Wood continued in the care and disposition of these goods as surviving partner, we think the policy continued in force as to them, notwithstanding the decease of Johnson. But it is not for these goods alone, or for a loss while managing the business of the late firm as survivor, that the plaintiff seeks to recover; but for goods bought on his own account and used in his private business.

This is not a mere change of relative interest. It is a new business and a new party, and to make the defendants liable to Wood alone, it must be shown that they have contracted with him. A contract with Wood & Johnson can not be transferred into a contract with Wood without their consent. Such a change in the contract, and the business, the defendants can not be supposed to have contemplated when they issued the policy. They may have contemplated that if one partner should die during the term of the policy, it should be kept in force while the survivor closed the business of the firm. That is reasonable. But it is unreasonable to extend it to a new business, and a new firm.

Hence, when one partner sells to his associates, there can be no recovery by the old firm for a subsequent loss; *Tillou* v. *The Kingston Mut. Ins. Co.*, 1 Seld. 406; *Murdock et al.* v. *The Chen. Co. Ins. Co.*, 2 Comst. 210; 3 Denio 301.

This has sometimes been put upon the ground that at the time of the loss the old firm had no insurable interest in the property. But we think where there is a voluntary change of the firm, the insurance company may also well say that the new firm is not the party with whom they contracted. They might consider the risk increased as much by the departure of one of the assured from the firm as by the introduction of a new party; and when such a change is voluntary, it is a risk which they did not contemplate. They might be willing to insure Wood while connected in business with Johnson, and wholly unwilling to insure or deal with him alone. The rights and liabilities of Wood & Johnson might be very different from those of Wood alone. They might be solvent and he insolvent. The fact, that by the partnership articles, the plaintiff had the right to purchase the stock and continue the

business, upon the dissolution of the firm of Wood & Co., can not alter the rights of these parties as to the extension of the insurance. The clause in the articles was not made known to the defendants, and therefore could not bind them. Even if known, we think it could have had no effect, unless it had been incorporated into the contract by express words.

Without the assent or agreement of the defendants to treat the policy as a policy to Wood alone, we do not think he can recover for these subsequently purchased goods.

II. The more important question next arises, as to the effect of the evidence excluded by the court.

The plaintiff, in his declaration, alleges the execution of the policy, the agreement in the partnership articles, the death of Johnson, the purchase of the goods by Wood, and an agreement of the defendants with Wood that in consideration of his paying all subsequent calls upon the premium note, " the policy should inure to his benefit, and stand as a policy to him for the insurance of his sole goods and property, kept in the store and employed in the prosecution of the business," and performance by the plaintiff relying on this promise of the defendants, whereby the defendants became liable, etc.

The evidence excluded by the court tended to prove such an agreement entered into with the plaintiff, upon full notice of all the facts, both by the agent and the directors of the defendants' company. But it was not claimed that the agreement was in writing. The evidence showed that it was express, but verbal with the agent, assented to by the directors, and had been acted upon by both parties.

A policy of insurance is a mere chose in action, and not assignable at common law so that the assignee can sue in his own name, and though like a bond, it may be made payable to the insured and his assigns, still, if a loss happen, the equitable assignee must sue in the name of the original assured; *Skinner* v. *Somes,* 14 Mass. 107; *Jessel* v. *Williamsburgh Ins. Co.,* 3 Hill 88; 7 Wend. 72; Phil. on Ins. p. 61 ; 9 Wend. 404.

In the charters of modern insurance companies and usually in policies of insurance, there is a provision that a sale of the property insured shall avoid the policy; but that the vendee ·having

the policy assigned to him, on application to the company within some limited period of time, may have the policy ratified and confirmed to him, so that he may be substituted for the original assured, and have all his rights and liabilities. In New York it has been held that the vendee and assignee, under such a policy, must sue in his own name and not in that of the assignor; *Mann* v. *The Herk. Co. Ins. Co.*, 4 Hill. 188; 1 Hill. 71.

As to the form of bringing the action the question is not important in this case, for the plaintiff is both vendee and assignee, and also as surviving partner the only one who can sue as the original party insured. And as under our decisions he might join his own individual claims with those as surviving partner (2 Vt. 569; 4 Vt. 26), the question as to who should sue does not arise. In the charter of this company, section 12, it is provided that when a *house or building* is alienated the policy shall be void; but that the vendee having the policy assigned him may within thirty days have it confirmed to him, etc. There is nothing in the charter as to the alienation of *goods*. Nor is there any provision in the charter or by-laws specifying *how* the policy shall be confirmed to the vendee, or that it shall be in writing. The first and second sections of the eighth article in the by-laws enable the vendor of goods insured to have his policy cancelled in whole or in part. They have no further application. As, therefore, there is nothing in the charter, by-laws or policy, to determine the effect of consent by the company to an alienation of his interest in the goods by one of the assured to his associate, nor how the vendee or assignee may have the policy ratified to him so as to inure to his benefit, we are obliged to recur to the general principles of the law of insurance to determine the point here in issue.

The general rule of the common law is, that a chose in action can not be assigned, so that the assignee can sue in his own name, unless there is an *express* promise by the debtor, upon sufficient consideration, to pay the assignee.

It has been held in this State that the *bona fide* assignment of a debt, and notice, constitute a sufficient consideration for a promise by the debtor to pay the assignee. *Moar* v. *Wright*, 1 Vt. 57, contains an elaborate opinion of Judge ROYCE on this point. It

has been since followed in this State; 7 Vt. 197; 11 Vt. 82; see also 18 Maine 122; 21 Maine 484; 4 N. H. 69; 4 Cow. 13; 3 Hill. 88; 9 Wend. 317.

In *Mowry* v. *Todd*, 12 Mass. 283, PARKER, Ch. J., says, "whatever may be the effect of handing over a written contract to a party to whom it is intended to be transferred, without a recognition of the transfer by the person bound by the contract, and a promise to pay to the holder, we are satisfied that with such recognition and promise the assignment is sufficient without the name of the assignor. It amounts to the substitution of one creditor for another, by the consent of the two creditors and the debtor ; and an action may be maintained by the assignee in his own name, founded on the assignment and the express promise to pay."

In England it has been held, that to make the consideration sufficient there must be something more than the mere assignment of the debt, such as release of another's liability, or forbearance ; 4 B. & C. 163 and 166; 8 B. & C. 402 and 395.

In applying this general rule to the law of insurance, Mr. Phillips, in his treatise on insurance, p. 61 and 62, says, "If the underwriter has agreed to account and make payment to an assignee, the latter may commence proceedings in his own name, where nothing remains to be done on the part of the assignor, and all his interest in the contract has ceased ; and if the assignment taken in connection with the policy plainly transfers the assured's whole interest, the underwriter's *assent to it is evidently equivalent to his agreement to be directly answerable to the assignee.* In such case the suit may be in the assignee's name, and he becomes to all intents and purposes the substituted party to the contract." The 8 Mass. 515, seems to recognise the rule as thus expressed. The correctness of the rule is indisputable so far as it is founded on an express promise by the insurer to pay. Nor does it seem an unreasonable conclusion, that the assent of the insurer to the assignment and continuing validity of the policy and to the alienation of the property, where alienation avoids the policy, should be held equivalent to an express promise, since without such consent the policy would be void. The assent of the insurer in such case is nothing unless it amounts to an express

promise, for he knows that assent or agreement with one who has parted with all his insurable interest in the property insured, would be null, a mere gaming policy. We think the rule as expressed by Mr. Phillips, is founded upon good sense and the fair analogies of the law.

The case of *Bodle* v. *The Chenango Co. Ins. Co.*, 2 Comst. 53, has been cited to show that no action at law will lie. That was a bill in equity, and the court of appeals held that it was well brought, and that the orators had no remedy at law. There Jona Bodle sold to James Bodle an undivided interest in the goods insured, and the insurance company agreed that the policy should remain good to Jona Bodle on the store for six hundred dollars, and to Jona and James for fourteen hundred dollars on the goods. The charter of the company had the usual provision that the grantee having the policy assigned to him might, on application, have the same ratified so that he should be substituted for the original assured.

The case seems to have been considered only in the one view, whether the orators had complied with the provisions of the charter so that they might sue at law; and the court held that there was no assignment of the policy or any part of it by James to Jona, so as to enable them to sue as assignees under the provision in the charter. If the suit had been by James and Jona Bodle on the express promise to pay the fourteen hundred dollars to them, and had set forth their application to have the policy continued and ratified as to them, and the agreement of the company to do so, and the entry of Jona Bodle's name as a member, we think a sufficient consideration and a valid contract would have been shown so as to have sustained the action at law. But this view of the case does not appear to have been presented.

In the case at bar Wood, by the decease of Johnson, became the legal assignee of the policy, and had the sole care and disposition of the property insured. He purchased the beneficial interest which Johnson's estate had in the goods, and thus became the legal owner of both the goods and the policy. Johnson's estate had nothing in either. Being thus the legal assignee of the policy and vendee of Johnson's interest in the goods, he applied to the general agent of the company to ratify and continue

the policy to him alone, and for his sole goods, during the period for which the policy by its terms was to continue. The agent did expressly agree to this proposition. If he had authority to so agree, he thereby bound the company. But whether he had or had not we do not consider material, for the case states that the directors, with notice of the death of Johnson and that the plaintiff was continuing the business, *assented to this agreement*, and treated the policy as so continuing. The agent had authority to receive the proposal of the plaintiff, and if not authorized to accept it, it was his duty to communicate with the directors. As the plaintiff had no communication with the principals, but did the whole business through the agent, he could not be expected to have proof of an express promise or of an express assent by them. If they treated the agreement he had expressly made with the agent as valid, and acted upon it for more than two years and up to the time of the loss, we think such conduct a sufficient ratification of the agreement; and fully sufficient to support and confirm it, although no direct and express language of affirmance is shown. Circumstantial evidence which establishes such assent to the agreement, has all the force of a positive agreement in words. Assent that the policy should continue in force for Wood's sole benefit, excludes all idea of its continuance for the benefit of Wood & Johnson, Johnson being dead, and the policy and the goods being vested in Wood, an assent that the policy should continue in force for his sole benefit, must be deemed equivalent to an express promise to pay him the insurance money in case of loss.

Indeed, this may be considered not so much an assignment of a chose in action, as a ratification of the policy upon sufficient consideration by the insurer to the plaintiff as the party insured; the plaintiff thereafter holding the policy not by assignment, but as a party substituted by contract upon sufficient consideration, for the original party.* It was not necessary that the substitu-

tion should be pursuant to the provisions of the twelfth section, for that applied only to buildings, and not to the alienation of goods. The agreement of the plaintiff to remain liable on the premium note was a sufficient consideration.

It is objected also by the defendants, that such an assignment or substitution can not be by parol, but must be in writing.

There is nothing in the charter, by-laws or policy, requiring the assent of the company to such substitution to be in writing.

It is well settled that the promise to assume a chose in action, made by the debtor to the assignee, enabling the latter to sue in his own name, need not be in writing; 3 B. & C. 842; Chitty on Cont. 532 and notes.

This can not be deemed the creation of a contract of insurance by parol evidence, but only the ratification and confirmation of an existing policy to a new party having an interest in the subject matter of the insurance. Though such confirmations are in many insurance companies required by charter or by-law to be in writing, yet it is obvious that in the absence of any statute requiring such act to be done only by writing, parol evidence that it has been done and acted upon is admissible; 5 Fost. 169, *Goodall* v. *N. E. M. F. Ins. Co.*; 22 Conn. 575, *Peck* v. *New Lon. Co. Mut. Ins. Co.*

We do not deem it necessary to consider the question whether an oral contract of insurance, when it has been acted upon, is binding between the parties.

As the evidence offered was admissible as tending to prove an express promise, or what was equivalent to it, a new trial must be had.

Judgment reversed.