## THE PEORIA MARINE AND FIRE INSURANCE COMPANY.

*v.*

## ROBERT HERVEY AND FRANCES W. HERVEY, *et ux.*

1. PARTIES — *assignee of insurance policy may sue.* An action of assumpsit will lie, by the assignee of an insurance policy, on the express agreement and promise of

the insurance company to pay the assignee for any loss when a renewal receipt is issued to him, after the assignment and the payment by such assignee of the premium on the renewal.

2. Such renewal and payment of the premium by the promisee, is a new promise for a valuable consideration, for the breach of which an action of assumpsit will lie by the assignee and promisee.

APPEAL from the Superior Court of Chicago.

This was an action of assumpsit brought in the Superior Court of Chicago by Frances W. Smith against the Peoria Marine and Fire Insurance Company. The marriage of the plaintiff with Robert Hervey being suggested to the court, he was made a party plaintiff.

The cause was submitted to the court for trial without a jury, and the court found for the plaintiffs, and assessed the damages at one thousand and sixty-two dollars.

A motion for a new trial was made and overruled, and a judgment entered on the verdict.

From this judgment the insurance company appealed to this court, and assign several errors; the second of which was the one principally insisted on, and is as follows: That an action of assumpsit cannot be maintained upon the policy in question.

As the opinion of the court is based chiefly upon this assignment of error, and as it contains all the pleadings and evidence necessary to a full understanding of the case, they are here omitted.

Messrs. SCAMMON, McCAGG and FULLER, for the appellants, made these points:

1. The first point we make is this: that the policy of insurance issued to Bishop is the only contract of insurance shown in the case, and that the plaintiffs cannot maintain an action upon it, in their own names, as assignees of Bishop.

A fire insurance policy is not assignable, so as to enable the assignee to bring suit upon it, in his own name. Angell on Fire and Life Ins. § 11 of introduction, and § 211, and note;

2 American Leading Cases, 432; *Jessel* v. *The Williamsburg Ins. Co.* 3 Hill, 88.

In this case the insurance company had given its written consent to the assignment of the policy to the plaintiff, but the court held, on common law principles and authorities, that the assignee could not sue in his own name.

Under the general rule of the common law, "a contract of insurance is *not* assignable, so as to give an action in his own name to the assignee, though by the terms of the policy the contract is with the assured and his assigns, and the loss payable to him and his assigns." *Rollins* v. *Columbian Fire Ins. Co.* 5 Foster, N. H. 204; *Folsom* v. *Belknap County Mutual Ins. Co.*, 10 Foster, N. H., 231; *Shepherd* v. *Union Mutual Fire Ins. Co.*, 38 N. H., 232; *Conover* v. *The Mutual Ins. Co. of Albany*, 3 Denio, 254, citing and approving the case in 3 Hill, 88.

The same rule is recognized in the cases of *Flanagan* v. *The Camden Mutual Ins. Co.* 1 Dutcher, N. J., 506; and *Bayles* v. *The Hillsborough Ins. Co.*, 3 Dutcher, 163.

These cases establish the proposition stated above, that at common law, the assignee of a policy of insurance cannot sue upon it in his own name, and this has been a well settled rule of law for more than one hundred years. *Dhegetoft* v. *The London Assurance Co.*, Mosely, 83; *Carter et al.* v. *The United Ins. Co.*, 1 Johns. Ch. 463.

The cases decided in New York, New Hampshire, Massachusetts, and New Jersey, in which actions have been sustained in the names of the assignees of policies, are all either cases of mutual insurance companies, whose charters provided for bringing suits in the names of the assignees, or there was a general law of the State, authorizing suits in the name of the assignee, or else a stipulation in the policy to that effect, and those cases in no degree conflict with the doctrine contended for.

It may be claimed that the payment by Mrs. Smith of the premium for the renewal of the policy and the renewal receipt, made a new contract between her and the company,

and that this action may be maintained for a breach of that contract.

To this we reply, first, Bishop assigned to her *his* policy, and, secondly, that the contract of renewal was reduced to writing, as expressed in the renewal receipt, whereby the company, in consideration of forty-five dollars paid by the holder of the policy, " consented to the *continuance of the risk originally insured,*" &c., for one year longer. This was an extension of the contract for that time, on the same terms ; but not a new contract either in form or substance. The renewal receipt did not change the parties, or the terms of the contract, nor alter its legal effect.

This was expressly decided in the case of *Herron* v. *The Peoria Marine and Fire Ins. Co.*, 28 Ill. 235, where the effect of such a renewal of the original policy, upon the terms and legal character of the instrument, was fully considered by this court, and it was held that it did not even change it from a sealed to an unsealed instrument; and we insist that if it did not have that effect, it cannot be construed to change the parties to the contract, by implication, when it does not profess to do so, but only " to continue the risk originally insured." Again we answer, that the evidence, taken together, wholly fails to show a new contract with Mrs. Smith. The contracts of the company are evidenced by the policy and the renewal receipt. Admit that Mrs. Smith paid the money for the renewal, still that amounts to nothing more than this: that the company agreed that the original insurance, made with Bishop, should be continued for her benefit, and that in case of loss, the company would waive the right to object that Bishop was not the owner of the property insured, at the time of the loss.

2. In American Leading Cases, 432, the legal effect of the consent of the company to the assignment of the policy is most forcibly and accurately stated as follows : " When the assent of the insurer is given to the assignment of the policy, it does not appear to operate as a new promise founded upon the former consideration, but as a mere waiver of the right possessed in the

4 — 34th Ill.

case of insurances against fire, although not in that of marine insurances, to insist upon the ownership of the property as one of the essential ingredients of the contract, and a permission that the rights held under it by the insured, shall be exercised for the benefit of the assignee. That the assent thus given is not a new contract between the insurer and the assignee, is evident from the fact, that even when it has been indorsed in writing on the policy, the latter cannot sue upon it in his own name, but must have recourse to that of the assignor."

This accords with the principle of Herron's case, 28 Ill. 235, which is, that the renewal receipt made no change in the terms or nature of the original contract of insurance; and as there was no evidence of any contract between Mrs. Smith and the company, except what is found in the policy and the renewal receipt, which do not ·show any contract with her, it seems to follow that there was no proof of a legal cause of action existing in her, but only an equitable right, to be enforced in the name of Bishop; and the judgment should be reversed for error, in holding that she could maintain an action in her own name, upon the contract of insurance made with Bishop, and extended for her benefit.

II. The contract of insurance proved in this case, was under seal, and assumpsit cannot be maintained for a breach of it.

The Peoria Marine and Fire Insurance Company was incorporated February 20, 1841, Laws of 1841, page 151, with the powers, privileges and immunities granted to the Mount Carmel Marine and Fire Insurance Company, by an act approved March 2, 1837, Laws of 1837.

The sixth section of the latter act is as follows:

" All policies of insurance made by the corporation shall be subscribed by the president, or in case of his death or absence, by the vice president, and countersigned *and sealed* by the secretary of said company; and all losses arising under any policy *so subscribed and sealed*, may be adjusted and settled by the president and board of directors."

This section required all the policies of insurance to be "sealed by the secretary of the company," &c. The policy issued to Bishop has the seal of the company in the usual place for corporate seals, at the lower left hand corner of the page, as may be seen by inspection, and although the attestation clause does not refer to the seal; that makes no difference as to the effect of it on the character of the instrument.

It was the duty of the officers of the company to affix a seal to the policies issued by them, and as they did so in the present instance, the policy is a sealed instrument, and assumpsit cannot be maintained for a breach of it.

The court will observe that no change was made in the policy at the time of renewal. It remained an insurance for the same amount, on the same property, for the same premium, and subject to the same conditions as before, but continued one year longer, and so far as the contracts show, between the same parties.

In Herron's case, 28 Ill. 235, there had been three renewals of the policy. On the second renewal the rate of premium was increased, and on the third, the amount insured was increased three hundred dollars, yet the court held the character of the original contract of insurance was not in the least changed by all this, and that it still remained a sealed agreement, on which covenant could be maintained. The policy now before the court contains the same condition for its renewal, as that in Herron's case, and so far as we can see, the renewal receipts were in form and legal effect the same in both cases.

From this it follows that the original policy of insurance issued by the appellant to Bishop, was under seal, and could not be transferred by him, so as to vest a right of action at law in the assignee in his own name; and it also follows that the legal character of that policy was not changed by the renewal receipt, which, as Judge BREESE said in Herron's case, "was no new contract, but merely evidence that the condition of the policy had been complied with by the assured;" it did

not make it any more assignable than it was before, or change it from a sealed to an unsealed agreement, as was expressly decided in Herron's case, and if it did not have the latter effect, it certainly cannot be evidence of a new, independent contract between Mrs. Smith and the company, for it does not purport to be that, and the evidence in the case shows it was not intended to have that effect. Joy testified that "Bishop wanted him to go to see the policy renewed," and Bishop said to Wright he wanted "to make transfer" (of the policy) "and pay premium." The entries from appellant's books show, first, the issuing of a policy to Thomas B. Bishop, October 22, 1858; secondly, an assignment of that policy to Mrs. Frances W. Smith, and, thirdly, that a new insurance was made with Bishop, October 22, 1859, of the same property, and on the same terms for one year longer; in all this there is no proof of an intent or attempt to make a new contract with Mrs. Smith, but only to extend the one made with Bishop, for one year longer, ending October 22, 1860.

III. The seventh condition of the contract of insurance is as follows :

"Policies of insurance subscribed by this company shall not be assignable without the consent of the company expressed by indorsement made thereon; in case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of such policy shall thenceforth cease; and in case of any such transfer or change of title in the property insured by this company, or of any undivided interest therein, such insurance shall be void and cease."

There was no consent of the company indorsed on the policy. The blanks seem to have been filled up, but the form of such consent was not signed or executed by the company.

The evidence on this part of the case is merely this: Mrs. Shaw testified that after the loss, while she and Wright were in Asay's office, Wright said the assignment was quite right; that he would pay the loss to no one else than Mrs. Smith;

that he wrote the assignment, and did not put his name to it because he was in a hurry.

But Joy, who went with Bishop to the company's office, testified that he "did not remember anything was said about assignment of policy;" that "he went there at Bishop's request to see the policy renewed."

They effected what they went to the office for, that is, a "renewal" of Bishop's policy, and an assignment of it to Mrs. Smith was not necessary, as she could enforce her rights in his name, and even if it should be thought that the policy could be assigned so that the assignee could sue upon it in her own name, still the written consent of the company must have been first given, or the assignment made void the policy by the terms of the VIIth condition.

These conditions are strictly construed in favor of the company. *Smith* v. *The Saratoga Co. Marine and Fire Ins. Co.*, 3 Hill, 508; *Dey* v. *Poughkeepsie Mutual Ins. Co.*, 23 Barb. 624; *Bayles* v. *Ins. Co.*, 3 Dutcher, N. J., 163; *Carpenter* v. *The Providence Washington Ins. Co.*, 15 Peters, 495; *Dix et al.* v. *The Mercantile Ins. Co.; Same* v. *The Chicago City Ins. Co.*, 22 Ill. 272.

No written consent to the assignment of the policy being indorsed upon it, the assignment by Bishop to Mrs. Smith avoided the policy by the terms of the VIIth condition, in which event no one could recover on the policy, and if there was no assignment of the policy, then plaintiffs have no right to sue upon it in their own names for any purpose.

The whole case may be summed up as follows: The appellant issued a sealed policy of fire insurance to one Bishop, dated Oct. 22, 1858, for one year from that date; during the year he sold the property insured to Mrs. Smith; this, by the terms of the VIIth condition attached to the policy, avoided it, but on the day it expired he went to the company's office, and, for Mrs. Smith, paid the premium to renew and extend the policy for another year; took the ordinary renewal certificate given in such cases, and during the extended term a loss occurred, and Mrs. Smith brought

this action of assumpsit in her own name upon the policy and renewal certificate.

The remedy, if any, was an action of covenant on the policy in Bishop's name to her use, for that was the only contract existing between the parties. If it is said the objections taken are merely technical ones, we reply in the language of the Supreme Court of the United States: "That the same reason would require the court to reject all rules of pleading. These rules are founded on sound reason, and long experience of their benefits. It is no wrong or hardship to suitors, who come to the courts for a remedy, to do it in the mode established by the law." *Farni* v. *Tesson*, 1 Black, 209.

The plaintiffs must recover upon the policy issued to Bishop, or not at all. It could not be assigned *without* the consent of the company indorsed upon it, for by the terms of the policy that would avoid it.

It could not be assigned *with* the assent of the company so that Mrs. Smith could sue upon it in her own name, for it is not assignable at law so that she could do so, as the cases cited under the first point fully show, and we repeat what we said under that head, that all the cases which appear at first view to hold a different doctrine, whether in New Jersey, Massachusetts or New Hampshire, are cases of mutual insurance companies, or under special provisions contained in the charters of the companies, or the general laws of those States.

The renewal certificate is not evidence of any new contract of insurance. It only continued the old one, and that was a sealed instrument before, and such it remained, and assumpsit will not lie upon it, either in Bishop's name or Mrs. Smith's. If the policy and the renewal certificate together are necessary to sustain this action, it must fail because they do not show a contract with the plaintiffs, and because the parties and form of action are both wrong; if these instruments are rejected, then there is no evidence to support the action, and in either view the judgment is erroneous, and should be reversed.

Messrs. HERVEY, ANTHONY and GALT, in reply:

The appellant in his argument in this case, seems to assume that this action is brought by the assignee of a policy of insurance in her own name, and has, laboring under that grave misapprehension, directed his attention almost exclusively to a discussion of that point; whereas the appellee does not rest this case upon that point at all, and the action was never commenced by the appellee in that capacity, or prosecuted upon any such theory.

The declaration consists of three counts, besides the common counts, the first of which alleges the making and issuing of a policy of insurance on the 22d of October, 1858, to Thomas B. Bishop, his sale of the premises to plaintiff Frances W. Smith on the 22d of October, 1859, the assignment of the policy by the *consent of the company to appellee*, and then the payment of $45 premium by plaintiff to the insurance company, the issuing of a renewal certificate, &c., whereby the insurance company undertook for said amount to continue the insurance on the property on the terms contained in the original policy.

The second and third counts differ very materially from the first, and they set out the making by defendant on the 22d of October, 1859, of *an agreement with the plaintiff*, in consideration of certain amount of money paid by the plaintiff to the defendant, to insure the property in question, and that the defendants "*undertook* and promised to become and be, and became and were, insurers to plaintiff," upon the property mentioned, for the term of one year from October 22, 1859. The counts then aver sole *ownership by plaintiff* of insured *property* from the *date* of *the undertaking* to the *time* of the *loss*, and that the property was *destroyed* by *fire* on the 19th of August, 1860, and the *damage* claimed is *two hundred dollars*.

On the trial of the case, it was proven that the sum of $45 was paid to the agent of the company *by the appellee;* and a receipt for the money, given to her, recites, that in consideration of said sum they "do hereby consent to the continuance of the risk originally insured in Policy No. 723, from the 22d

day of October, 1859, to the 22d day of October, 1860, the original application to remain in full force and virtue." The loss by fire, and damage, was fully proven, and no defense whatever was interposed by the insurance company, except the naked, technical objection, that we had mistaken our·form of action.

The merits of the case being wholly and entirely with the appellee, it does not appear doubtful how the law should be.

If the contracts and obligations which men are accustomed to assume for gain have any validity, then we see no reason why the undertaking on the part of this insurance company should not be held good. It cannot complicate or obscure this case at all by presenting, in the most prominent manner, the question of the relative rights of an assignee of a policy of insurance, even if the assignment was made, as in this case, with the full knowledge and express *consent* of the company, because those rights are not necessarily at issue. The only question that can come legitimately before the court is: Can Mrs. Frances W. Smith (now Mrs. Hervey) recover of the Peoria Marine and Fire Insurance Company, in her own name, the amount of damages which they, as an insurance company, undertook to pay her in case the property was destroyed by fire? 2 W. Bl. 1269; 1 H. Bl. 239; 12 Mass. 281; 18 Me. 122; 21 id. 484; 12 Vt. 358; 28 Me. 51.

The mere fact that the property in question was the *year before* insured by Mr. Bishop, and that he assigned the policy to Mrs. Smith does not affect the question which the record presents. The company made and entered *into a contract* with Mrs. Frances W. Smith that they would, for the sum of forty-five dollars, insure her property for one year against all loss and damage by fire. She was one party and the insurance company the other party; she paid the money, and the insurance company accepted it, and nobody else was concerned. The " risk " referred to in the receipt as " originally insured in Policy No. 723," meant the property in question, and the " original application to remain in full force and virtue," meant simply that no new application for the insurance need

be made out, but that the company would waive that, and let the original application remain.

Indeed, the case is just the same as if a house had been leased, and a stranger coming into possession of the premises, makes a bargain with the landlord that he will occupy the premises for another year on the same terms as the original lessee. Would a memorandum or receipt of this character renew the old, expired lease with the original lessee? Would any body pretend for a moment that such would be the case? Now, does not the same identical principle apply in this case, and are not the cases precisely similar? Is it possible that it can be gravely contended, that because Mrs. Smith went to the insurance company with the policy of insurance in her hand, which had been issued to Mr. Bishop, and showed it to them, and the agent, after looking at it and after informing her that they would continue the "risk" for a year for forty-five dollars, and she paid the money, that that kept alive and continued or renewed Mr. Bishop's old policy? We think not; and in support of this position, we respectfully call the attention of the court to the case of *Flanagan* v. *The Camden Mutual Insurance Company*, 1 Dutch. 519, which seems to be perfectly conclusive upon this point. See also, 12 Mass. 283; 5 id. 204; 33 Penn. 221; 10 Cush. 350; 3 Metc. 66; 7 Cush. 175; 8 Mass. 515; 31 Verm. 552; 17 N. Y. 415; Phillips Ins. 61, 62; id. 83, 84.

In that case, the court, after deciding in the most positive manner that an assignee of a policy of insurance *can* recover in his own name, where the assignment has been made with the *consent* of the company, then go on to say: "But in this case the right of the assignees to maintain an action in their own name, does not rest solely on the assignment of all Stewart's interest in the policy, and the assent of the defendants to the assignment. In the first place, the defendants agreed with the plaintiffs to continue the contract of insurance for the benefit of the plaintiffs, until the expiration of the first year. When the year expired, in consideration of a premium paid to them by the plaintiffs, they renewed the policy; thereby

expressly, by a new contract, insuring them for another year; and so, for a new consideration and by new contracts of renewal, reinsured them for two successive years afterwards. It is upon the last of these renewals that the action must be maintained.

" *The prior contracts had terminated by their own limitation; they were each for a single year.* Upon the *last contract* the plaintiffs have *clearly a right of action,* taking the allegations of the declaration as true. *It sets out this contract of insurance and the consideration paid* for it; alleges that the *plaintiffs were interested in the premises insured, to the amount of the insurance at the time of the loss, the destruction of the building insured, notice,*" &c.

The case of *Boyles* v. *Insurance Co.,* 3 Dutch. 164, simply decides that an *action* of *covenant* could not be maintained by the assignee of a policy of insurance on the policy upon the original covenants, nor upon the new contracts, unless it was *under seal,* but it does *not* decide but what assumpsit might be maintained upon a new contract.; and is in perfect accord with the doctrine here contended for. The case of *Luciane* v. *American Fire Insurance Co.,* 2 Wharton, 173, is also directly in point; and GIBSON, Ch. J., after deciding that the " expired policy stands on the footing of an expired lease, which, though it be competent to show the condition of a subsequent letting by parol, is incompetent to show a subsequent letting by deed, unless it were redelivered, having been altered to comport with the date and duration of the deed."

Then proceeds to say : " It is to be remembered that the action is not on the instrument as it was executed; that the insurance effected by it expired at the appointed time; that the clause in question regards insurance to be made thereafter; and that every renewal, even on the old terms, was necessarily to be a distinct contract, a consideration which makes it unnecessary to insist on the fact that each renewal was actually on new and different terms. Now, it will not be pretended that an agreement can dispense with these forms of subsequent execution, which the law declares essential to give the contract extension,

and yet preserve its generic character; a clause that subsequent verbal alterations or additions should be treated as if they were incorporated with the instrument, and make the whole a specialty, would fail of the effect; and parol indorsements have no greater force than verbal stipulations. A *covenant* that notes or bills to be drawn should have the qualities of specialties, would *not make* them so, or confound the settled distinctions of the law. If, then, the payment of a further premium cannot make the *old* policy a new one, what is the effect of it? Precisely the effect of an order to insure, and no more."

Now, these authorities show most clearly that the payment of money by Mrs. Smith, and the acceptance of the same by the company, created a new contract; and under no circumstances could covenant have been maintained, and this will the more clearly appear in the second place. Angel Ins. 93.

. II. When it is recollected,

1st, That Mr. Bishop, to whom the original policy of insurance had been issued, had parted with all his interest in the property and premises insured long prior to their destruction by fire.

2d, That the policy had expired by its own limitation; and

3d, That no valid assignment whatever had ever been made of the policy of insurance, according to the appellant, but that the same was, as the appellants contend, absolutely void.

III. Now, there probably never was a more remarkable position assumed by any party in a court of justice than is assumed by the appellants in this case. They first start out by *asserting* that this action has been brought by the assignee of the policy of insurance, and after proving the incorrectness and illegality of that, proceed, in the second place, to show that said assignment, although written out by the agent of the company with his own hand, and made by him, was illegal and the entire policy void.

The proof in regard to this matter is as follows:

"Mr. Wright, defendant's agent, was in Mr. Asay's office, and Mr. Asay showed want of name to consent of assignment,

and he said the assignment was quite right; that he should pay the loss to no one else than the plaintiff, Mrs. Smith; *that he wrote the assignment,* and did not put his name to it *because he was in a hurry.*"

The real party in this case is a lady who, when she paid her money, did not probably deem it necessary to employ an attorney to guard her against all the devices of this wily insurance company, or to protect her against the carelessness or negligence of their agents.

Yet here they are, like that modern master of special pleading, who, in defense of an action for cracking a kettle, first plead that he never had it; second, it was cracked when he got it; and third, that it was whole when he returned it. They plead, first, that we have brought this action as assignee of the original insurance policy, and then showing that that cannot be done; second, that "*the contract of insurance* proved in this case was under seal, and cannot be maintained;" and third, that the whole concern is void, from beginning to end.

In regard to the case of *Herron* v. *Peoria Ins. Co.*, 28 Ill. 238, the court will observe that in *that* case the original party to whom the policy of insurance had been issued, *was the plaintiff,* and was the owner of the premises; while in *this* case, the original party to whom the policy had been issued *had long since parted with his interest* in the property, and at the time of the loss, the old policy had expired, and he had no more to do with the premises than if he had never heard of them; and there is nobody who knows better than the appellant, that if a suit had been commenced in the name of Bishop, they would have shown that he had no interest in the premises, and would in that manner have defeated us at sight, (see 22 Ill. 272); especially would have this been so, if it is true, as the appellee contends in his *third* point, that the whole concern, including policy of insurance, assignment and new contract, are void.

We respectfully submit, that no evasion of the responsibility of this company should be allowed, but that, under the facts

and circumstances, the judgment of the court below should be affirmed.

Mr. Justice Breese delivered the opinion of the Court.

This was an action of assumpsit originally commenced by Mrs. Frances W. Smith, who, during the progress of the suit, intermarried with Robert Hervey, the plaintiff, and against the Peoria Marine and Fire Insurance Company. A verdict was rendered for the plaintiff, a motion for a new trial overruled, and the case brought here by a writ of error on the bill of exceptions. The declaration contained three counts; the first, after reciting the issuing of an insurance policy by the defendant to one Bishop, the terms thereof, &c., goes on to allege that Bishop, being sole owner of the property insured, on the 22d of October, 1859, sold and delivered the insured property to the plaintiff (then Mrs. Smith), and that on that day, Bishop, with the consent of the defendants, manifested and expressed by their indorsement on the policy, assigned the same to the plaintiff. It is then averred, that on the 22d Oct., 1859, the defendants executed a renewal certificate in writing, and delivered it to the plaintiff, and that in consideration of the sum of forty-five dollars paid by plaintiff as premium to the defendants at their request, and of the undertaking and promises by the plaintiff to perform and fulfill all things contained in the policy to Bishop, on her part to be performed, &c., the defendants undertook and promised the plaintiff to consent to a continuance of the risk originally insured from October 22d, 1859, to October, 1860, and to become and be insurers to the plaintiff of the sum mentioned in said policy upon the property, and to fulfill all things mentioned in the policy, on the part of the company to be performed and fulfilled; it then avers that the defendant became and was insurer to the plaintiff, and by its president and secretary subscribed the renewal certificate as such insurer upon the property. It is then alleged that the plaintiff remained owner until the loss by fire during the continuance of the term of the risk, and

notice to the defendant. The delivery by plaintiff to the defendant, on the 14th September, 1860, of her amount of loss, properly verified, is also alleged, and also the delivery of the certificate of the notary, as to his examination into the circumstances of the loss, and the amount thereof. The second count sets out the making of a certain instrument in writing and agreement by defendants with the plaintiff, known as a policy of insurance, and delivered the same to plaintiff on October 22, 1859, and avers that in consideration of the payment by plaintiff, at the request of the defendants, and to defendants of forty-five dollars as a premium for insurance of eleven hundred and twenty-five dollars on a stock of drugs and other property mentioned, and the undertaking and promising by plaintiff as in first count, the defendant undertook and promised plaintiff to become and be insurer to her of that sum upon the stock mentioned for one year, &c., and then avers as in the first count.

The third count sets out the making by the defendant, on the 22d October, 1859, of a certain agreement with the plaintiff, and that, in consideration that the plaintiff had paid premium for insurance and had undertaken and promised to perform and fulfill the agreement on her part, the defendants undertook and promised to become and be, and became and were, the insurers to the plaintiff upon the property mentioned for the term of one year from October 22, 1859, and avers a promise on the part of the defendants to perform and fulfill all things in the agreement on its part, it then avers sole ownership up to the time of the loss by fire on the 19th of August, 1860, and avers the delivery of the preliminary proofs, &c.

The common counts were added, and the breach assigned in the usual form.

The appellants make several points against the right of the plaintiff to recover in this form of action.

He contends that the policy of insurance issued to Bishop, is the only contract of insurance in the case, and that the plaintiffs cannot maintain an action on it in their own names, as assignees of Bishop; that a fire insurance policy is not

assignable so as to enable the assignee to bring suit upon it in his own name.

The last proposition is admitted but the first cannot be admitted. This action is not brought, nor does it profess to be brought on the policy issued to Bishop. That policy is referred to in the first count, as inducement, merely, to the contract, alleged to have been made with the plaintiff as set out in the third count; it is in no sense the ground of the action. The third count sets out simply, an agreement with the plaintiff on a sufficient consideration, to do certain acts. If the action was on the policy issued to Bishop, the authorities cited by the appellants would be decisive, as that was under seal, and this action is in assumpsit.

The question before us, is correctly put by the counsel for the appellee : can the plaintiff recover of this insurance company in her own name, the amount of damages which they, as an insurance company, undertook and promised to pay her, in case the property insured, was destroyed by fire? Did the company enter into such a contract, on a valuable consideration, with the plaintiff? The fact that they had, the year previous, insured the property for Bishop and that he assigned the policy to the plaintiff, does not, we think, affect, one way or the other, the real question stated above, and presented by this record. The plaintiff paid her money on the promise of the company to keep the property insured for one year, and gave a receipt therefor. That receipt is as follows :

Policy No. 723.    Renewal No. 1,721.

By this certificate the Peoria Marine and Fire Insurance Company, in consideration of forty-five dollars to them paid by the holders of policy No. 723, the receipt whereof is hereby acknowledged, do hereby consent to the continuance of the risk originally issued in policy No. 723, from the twenty-second day of October, 1859, to the twenty-second day of October, 1860 ; the original application to remain in full force and virtue.

The meaning of this writing is quite obvious. It acknowledges there is a holder of policy No. 723, who might be a per-

son other than Bishop; that a risk had been theretofore taken on the property in question, and declares, by the words, "the original application under which the risk was originally taken, to remain in full force and virtue," that the then holders of the policy need not make any new or additional application to the company for insurance, but the company would consider it as made by him who paid the money, and as on the terms of the original application. It amounts simply to this: that on the plaintiff going to the insurance company with the policy issued to Bishop in her possession, of which she was then the holder, on seeing it, the defendants, by their agent, say to her that she need not make a new application for insurance; that they would continue the risk for her benefit one year, on the payment by her of forty-five dollars. That had no effect upon the written policy of Bishop to continue it alive or to revive it, being dead, but it was a new contract with the plaintiff for a valuable consideration paid, and on the terms of the original policy.

Now, admitting that the assignee could not sue upon the policy if assigned, still, on the general principles of the common law, this being a new contract with the plaintiff, she could sue upon it in her own name.

If a person executes his note to another, which is not negotiable, and had been assigned in fact to a third party, and is held by him, and the maker promises and agrees with such party to pay the note to him, what principle of law is there to prevent a recovery by suit in his own name, and show the note and prove the facts which were the inducement to the promise? We know of none. This doctrine has been recognized in several cases. In *Mowry* v. *Todd*, 12 Mass. 288, it was held, PARKER, Ch. J., delivering the opinion, that if the principal contract which is declared upon, was duly assigned to the plaintiff so as to give him the equitable interest and entitle him to an action in the name of Fisher (the payee), we have little doubt that an express promise made to him by the defendant, gives him a right of action in his own name upon that promise. The court say, whatever may be the effect of handing over a

written contract to a party to whom it is intended to be transferred *without* a recognition of the transfer by the person bound by the contract, and a promise to pay the contents to the holder, we are satisfied that *with* such recognition and promise the assignment is sufficient without the name of the assignor. It amounts to the substitution of one creditor for another, by the two creditors and the debtor; and an action may be maintained by such assignee in his own name, founded on the assignment and the express promise of the debtor to pay him.

The only question of difficulty the court found in this case was, whether the contract or undertaking of Todd, the maker of the note, to the payee, Fisher, was duly assigned to Mowry, the plaintiff. It appeared clearly to have been the intention to assign it; a valuable consideration was paid, and the written evidence of the contract was delivered over to the plaintiff, but Fisher had not signed his name on the back, although words of transfer were written for the purpose of having his signature, and the omission was accidental, and not by design.

In principle, it is precisely analogous to this case in many respects; this case being stronger, because Bishop had actually assigned the policy, with the consent of the defendant, the ratification thereof not being indorsed, by accident and not by design.

In support of the doctrine, reference is made to *Fenner* v. *Meares*, 2 Wm. Bl. 1269. This was a case in assumpsit, for money had and received, brought by the assignee of a *respondentia* bond, the obligor therein having, beforehand, engaged, by an indorsement, to pay the same to the assignee. Though this decision was questioned by Lord KENYON, and Lord ELLENBOROUGH said he had read it twice and must read it again before he assented to it, we cannot find that it has ever been overruled.

In *Smith* v. *Berry*, 18 Maine, 122, the court held that where a note, not negotiable, was assigned to a third party, such party might maintain an action in his own name, on the express promise of the maker to pay him the note.

To the same effect is the case of *Warren* v. *Wheeler*, 21 id. 484.

In *Hodges* v. *Eastman*, 12 Verm. 358, it was held that the assignee of a note not negotiable, may maintain an action in his own name when the assignment is for a valuable consideration, and where the debtor promises to pay the assignee.

In *Blanchard* v. *Waite*, 28 Maine, it was held, in an action of assumpsit on a contract of insurance, that such contract is completed when there is an assent to the terms of it by the parties, upon a valuable consideration. See, also, to the same effect, *Scott* v. *Lancaster*, 3 Harris and Johns. 441; *Barger, Ex'r,* v. *Collins,* 7 id. 213; *Matthews* v. *Houghton,* 11 Maine, 377.

Other cases to the same effect might be cited, but it is unnecessary; the principle is too obvious for argument or illustration. The action is brought on the new agreement and promise, which having been made for a valuable consideration paid, is binding on the defendants and can be enforced. The original policy has been assigned, and with the consent of the defendants; and out of that assignment and the payment of forty-five dollars as premium, originated the promise to continue the risk, one year, and incorporated into it, by reference, all the stipulations and conditions of the original policy, as if they had been formally set forth and repeated. *Ford* v. *Canfield,* 6 Halstead, 327.

The case of *Flanagan* v. *Camden Mutual Insurance Co.,* 1 Dutcher (N. J.), 506, is much in point. There it was held, that at common law, an action will not lie on a policy of insurance in the name of the assignee; but if, upon a transfer of the premises insured, the policy is assigned to the purchaser and assented to by the insurer, it constitutes a new and original promise to the assignee, upon which an action may be maintained in his own name.

The same doctrine was held in *Wilson* v. *Hill*, 3 Metc. (Mass.), 69, and in *Jessel* v. *Williamsburg Insurance Co.*, 3 Hill (N. Y.), 88; *Benjamin* v. *Saratoga Mutual Fire Ins. Co.*, 17 N. Y. 415, if there was an express promise by the insurer to pay the assignee in case of loss. See also, *Wood* v. *Rutland and Addison Fire Ins. Co.*, 31 Verm. 552.

On principle and authority, we think the action is well brought in the name of the assignee to whom the promise was made.

It is said by appellant, that this case is like that of *Herron* v. *this same Company*, 28 Ill. 236, where this court held that the renewal receipt in that case did not make a new contract of insurance, and that an action for a loss should be brought on the original policy. That was a case in which the plaintiff was the original party to the policy, and the renewal receipt to him made no new contract with him, he then being the owner of the property insured.

The reference by appellant to 2 American Leading Cases, 432, to establish the principle that the assignment of the policy does not appear to operate as a new promise founded upon the former consideration, is all very well, but when it is founded upon a new consideration moving from the assignee, the case is very different, as is seen by the authorities cited.

We are well satisfied the recovery was proper in this action, and accordingly affirm the judgment.

*Judgment affirmed.*