BENJAMIN *v.* THE SARATOGA COUNTY MUTUAL FIRE INSURANCE COMPANY.

The plaintiff obtained a fire policy to himself as agent of the owners, upon property on which he held a mortgage, notifying the insurers of his interest. He afterwards obtained title by foreclosure, and agreed to convey the property to a third person. Upon being notified of these facts, the insurers consented that the policy should remain valid until title should be perfected in the vendee; *Held*, that this was equivalent to issuing a new policy to the plaintiff as owner.

Such consent having been given by the insurers, with notice that the vendee had agreed to pay to the vendor the premiums for continuing the insurance, the insurers, on paying a loss to the vendor, have no right of subrogation in respect to his securities for the unpaid purchase money.

The policy being conditioned that, in case of further insurance, the insurers should be liable only for such proportion of any loss as the amount insured by him should bear to the total amount of insurance, and that the policy should become void upon any further insurance without notice to them, the policy is not avoided by a subsequent insurance with notice to the insurers of its amount, but with an erroneous statement as to the companies from which it had been obtained.

APPEAL from the Supreme Court. Action on a fire policy issued by the defendant on the 10th of October, 1854. The trial was at the Chemung circuit, December, 1853, before Mr. Justice GRAY, without a jury. The judge found the following facts: At the time of the application for insurance, the plaintiff was a shareholder in an association which had built and owned a hotel in the village of Elmira. D.

H. Tuthill and two others were trustees of the association, and held the legal title to the hotel, for its benefit. The plaintiff was also a creditor of the association in the sum of $9,000, secured by a mortgage of the hotel. On the 10th of October, 1834, application in writing was made to the defendant, in the name of " D. H. Tuthill, S. Benjamin and others," for insurance upon the hotel, to the amount of $2,000. The application stated that the hotel was owned by a company of which Tuthill and the plaintiff were members, and that it was mortgaged to the latter for $9,000. It was signed, as was the premium note, "S. Benjamin, agent." The defendant issued a policy to "S. Benjamin, agent," reciting that he had become a member of the company and had bound himself to pay all sums that might be assessed for losses by the directors. It contained a condition that in case of subsequent insurance on the property insured, notice thereof should be given to the defendant, with all reasonable diligence, to the end that such subsequent insurance might be indorsed on the policy, or otherwise acknowledged in writing; in default whereof the policy should cease and be void. The condition also provided that in all cases of insurance the defendant was to be liable only for such ratable proportion of the loss as the amount insured by it should bear to the whole amount insured thereon, without reference to the dates of the different policies. Another condition was, that if the insured or their assigns should alienate the property insured, by mortgage or otherwise, or suffer any judgment or decree, operating as a lien upon the property, to pass against him, the policy should be void, unless the defendant should give its assent to the same.

On the 9th day of May, 1845, the plaintiff foreclosed his mortgage; and at the mortgage sale purchased the property for the sum of $9,447.97, being less than the sum due upon the mortgage.

On the 1st day of May, 1846, the plaintiff contracted to sell the premises so purchased by him to E. R. Brainard for

Benjamin *v.* The Saratoga County Mutual Fire Insurance Company.

$10,572, $1,500 of which sum was to be paid down, and the residue in ten equal annual payments, with interest. By the contract, Brainard was to pay to Benjamin the premium for keeping an insurance of at least $6,000 on the property.

After the plaintiff had become the absolute owner, in fee, of the property insured, and had contracted with Brainard for its sale, he notified the defendant of the fact, and that he had, subsequent to the defendant's policy, effected an insurance upon it for $6,000; but by mistake, and without any fraudulent design, stated in his notice that the whole $6,000 had been obtained in the Howard Insurance Company, whereas, in fact, $3,000 of the insurance was by the Hartford Insurance Company. To this notice the defendant replied by letter, under date of July 3d, 1846, addressed to the plaintiff individually, and not as agent, that the company consented to the contract he had made with Brainard, and consenting that the policy remain valid until the title should be perfected in Brainard; consenting also to the $6,000 insured in the Howard Insurance Company. After the defendant consented that the policy should remain valid, two several assessments upon it were made, which were by the defendant presented to and paid by the plaintiff.

In September, 1849, the insured property was destroyed by fire; a loss sustained of $12,000, and the proper preliminary proofs thereof presented by the plaintiff to the defendant. In May, 1850, the plaintiff, in pursuance of his contract with Brainard, conveyed to him the site and what remained of the tavern property, taking from him a mortgage to secure $10,000, the purchase money remaining unpaid.

The defendant claimed that the insurance was to the hotel association or its members, and was effected by Benjamin as their agent; that the parties insured by the policy had no insurable interest at the time of the loss; that

the insurance in the Hartford Company, no notice thereof having been given to the defendant, avoided the policy, and that if the plaintiff should recover, as mortgagee, the defendant was entitled to be subrogated to all the securities held by the plaintiff against Brainard. The plaintiff's counsel requested the judge to decide the contrary of each of these propositions, and, to his refusal so to decide, took several exceptions. The judge ordered judgment in favor of the defendant, which, having been affirmed by the Supreme Court at general term, in the sixth district, the plaintiff appealed to this court.

*Nicholas Hill,* for the appellant.

*W. A. Beach,* for the respondent.

HARRIS, J. The application for insurance, which became a part of the contract between the parties, stated truly that the property was owned by a company, of which Tuthill and the plaintiff were members, and that it was mortgaged to the plaintiff to secure $9,000. I am inclined to think the policy, issued under these circumstances, would enure to the benefit of all the parties interested in the property; primarily, perhaps, to the benefit of the mortgagee, and ultimately to the benefit of the owners. But this is a question which, though discussed at the bar, it is deemed unnecessary to determine.

After the insurance had been effected, and while the policy was still in force, the plaintiff foreclosed his mortgage, and, upon the sale, became himself the purchaser. The interest of all the other owners having thus been extinguished, the plaintiff entered into a contract to sell the property to Brainard. This contract was made on the 1st of May, 1846. Subsequently, and before the thirty-first of July, the plaintiff informed the defendants of this sale. The letter containing this information was not produced upon the trial. But

Benjamin *v.* The Saratoga County Mutual Fire Insurance Company.

it may be fairly inferred, I think, from the reply received by the plaintiff, that he had informed the defendants that he had become sole owner of the property, and had entered into a contract to sell it to Brainard, and had requested the consent of the defendants to the continuance of the insurance, notwithstanding this change in the ownership. The defend-ants, accordingly, wrote to the plaintiff on the 31st of July, 1846, consenting to the contract he had made with Brainard, and agreeing that the policy should remain valid until the title of Brainard should be perfected. After this change of ownership, and the consent thus given by the defendants, several assessments were made upon the premium note of the plaintiff, which were paid.

The legal effect of this change of ownership, and the consent of the defendants after notice of such change, that the policy should remain valid until a specified event should happen, was to create a new contract between the parties. Thereafter, however it may have been before, the plaintiff was the real party insured. Being himself the sole and absolute owner of the property, the policy became as effectual for his indemnity, as a new policy issued to him in his own name, and describing him as such owner, could have been. Indeed, the transaction was but a short mode of making an entirely new contract of insurance.

At the time of the loss, the plaintiff was still the legal owner of the property. By the terms of their contract, the defendants agreed with the plaintiff that they would pay him all losses or damage, not exceeding the sum specified, which should or might happen to the property by fire, during the time the policy should remain in force. The loss or damage was to be estimated according to the true and actual value of the property, and not according to the state of the accounts between the plaintiff and his vendee at the time the loss or damage should happen. To the extent of this loss, by the very terms of the contract, the plaintiff was entitled to recover.

Nor, whatever may be the doctrine on the subject when a mortgagee obtains an insurance for his own benefit, are the defendants in this case entitled to be subrogated to the claim of the plaintiff against his vendee.   By the terms of the contract of sale, of which the defendants had notice, the vendee agreed to .pay the plaintiff the premium for keeping the property insured for at least the sum of $6,000.   Whether he, in fact, paid the assessments upon the plaintiff's note to the defendants, does not appear, but I think the fair interpretation of the agreement that the policy should continue valid until the title should be perfected in Brainard, is, that the indemnity for which the policy provides, should enure to the benefit of Brainard, as well as the plaintiff.   To the extent of Brainard's equitable interest in the property, the plaintiff is to be regarded as holding the policy in trust for him.

One other question remains to be noticed.   The policy contains the usual condition that if any other insurance should be made upon the property, the plaintiff should, with all reasonable diligence, give notice thereof to the defendants, and have the same indorsed on the policy, or otherwise acknowledged in writing.   Further insurance was effected to the amount of $6,000, of which the defendants were notified.   But, by mistake, and without any fraudulent design, as the judge who tried the cause has found, it was stated in the notice of such further insurance, that the whole amount had been effected in the Howard Insurance Company, whereas, in fact, half the amount mentioned in the notice was insured by another .company.   It is insisted that this mistake amounted to a violation of the condition of the policy on this subject, and thus rendered the contract void.  But this position cannot be maintained.   The policy provided that in case of other insurance, the defendants should only be liable for such ratable proportion of any loss or damage which might happen to the property, as the amount of their insurance should bear to the whole amount insured.

It was, therefore, for the interest of the defendants, that other insurances should be effected. The greater the amount of insurance, the more their risk would be diminished. For the same reason, the defendants had an interest in knowing what other insurances were made upon the property; that thus they might also know for what proportion of any loss which might happen, they would be liable. But they were only interested in knowing the amount of such further insurance. By whom it had been made, it did not concern them to know. Both the terms and the object of the condition in the policy would be satisfied by a notice of the fact that further insurance to a specified amount had been effected, without specifying the particular persons or companies who had made such insurance. It was enough, in this case, for the plaintiff to inform the defendants of the true amount of insurance he had effected. This was all that it was material for them to know. It was all, too, that the condition of their policy demanded.

I am of opinion that the facts established upon the trial, as they were found by the judge, entitled the plaintiff to recover. The judgment should therefore be reversed, and a new trial granted, with costs to abide the event.

COMSTOCK, J. did not sit in the case; all the other judges concurring,

Judgment reversed, and new trial ordered.