WILLIAM O. WOOD, Respondent, *v.* THE NORTH WESTERN INSURANCE COMPANY, Appellant.

Plaintiff being the owner of a woolen factory and machinery therein, contracted to sell the same to C., the deed to be executed when the whole purchase-price was paid, C., to pay for insurance.

Plaintiff insured with defendant, C., paying the premium. The policy contained conditions precedent, in case the same was held as collateral security, and also restrictions upon the use of inflammable liquids used as a light. Kerosene oil was used for lighting purposes.

*Held*, 1st. Plaintiff had an insurable interest in the property itself.

2d. The policy was in fact taken for C.'s benefit upon the property, and not upon the debt against him, and was not held as collateral security within the meaning of the condition.

3d. That inasmuch as the legislature has declared certain grades and qualities of kerosene proper and safe to use, the right to take judicial notice could not be invoked, to establish its inflammable (i. e., explosive) qualities; but it was incumbent upon defendant to show, that the kerosene used was in fact "inflammable."

Judicial notice comes in the place of proof, and is generally to be exercised by a tribunal which has the power to pass upon the facts. This court will not take judicial notice of the existence of a fact, which has not been found by the court below, nor upon which a finding has been refused.

(Argued September 15th, 1871; decided November 10th, 1871.)

APPEAL from a judgment of the General Term of the seventh judicial district, affirming a judgment entered in Wayne county in favor of plaintiff upon the report of a referee.

The action was brought to recover $1,500 on a policy of insurance, of which $750 was on a frame building occupied as a woolen factory, and $750 on the machinery in it, burned at Red Creek, Wayne county, New York, on the 29th of November, 1866.

On the 1st day of January, 1862, the plaintiff made and executed a contract in writing, for the sale of said premises and machinery to one George Campbell, by the terms of which said plaintiff agreed to sell on condition, that said Campbell should perform and fulfill the agreement therein contained and specified, to wit: The said Campbell should pay for said property $4,415.63, as follows; $500 to be paid January 1st, 1863, and $500 on the 1st day of January, 1864, and the balance in annual payments of $600, each with interest on the whole sum unpaid, which was to be deducted or paid out of each annual payment; said Campbell was also to pay the expense of insuring the factory and saw-mill to the amount of $2,000, until the purchase-money unpaid should be reduced to $2,000, and pay all taxes and assessments on said property; all the machinery and fixtures on the premises at that time, or thereafter to be put upon said premises, were to be part of said property, and not to be removed without the consent of plaintiff. And it was further agreed in said contract, that in case said Campbell should neglect or refuse to keep and fulfill all or any of said agreements, he should forfeit all payments made or improvements put upon said premises, and Wood should have the right to enter upon and take possession of said premises, including machinery, tools and fixtures; and treat the said Campbell, as a tenant, holding over without consent and non-payment of rent; and when all the payments were made, said Wood agreed to convey said premises to Campbell by a good deed.

The policy in question was issued by defendant December 12th, 1863. It contained the following restrictions and conditions:

"Camphene, spirit gas or burning fluid, phosgene or any other inflammable liquid, when used in stores, warehouses, shops or manufactories as a light, subjects the goods therein to an additional charge, and permission for such use must be indorsed in writing on the policy."

(Condition No. 10, paragraph No. 2.)

"A claim against this company by the assignee or mortgagee, or other person or persons holding this policy as collateral security, shall not be payable until payment of such portion of the debt shall have been enforced, as can be collected out of the original security to which this policy may be held as collateral, and this company shall then only be held liable to pay such sum, not exceeding the sum insured, as cannot be collected out of such primary security."

The policy was renewed annually; the last renewal was in December, 1865. The premiums were, with the knowledge and assent of Campbell's agent, deducted from the payments made by him on the contract. Kerosene oil was used for lighting the factory, which was run nights. On the 29th November, 1866, the property was destroyed by fire. After the fire Campbell, who had not performed the contract, declined to make further payments, and at his request plaintiff took the property, and the contract was canceled. The value of the machinery destroyed was $2,200; the total loss $3,800. The referee gave judgment for the amount of the policy and interest.

*A. J. Parker*, for appellant. Defendant is not liable on the insurance on the machinery. (*Murdock* v. *Gifford*, 18 N. Y., 28.) Plaintiff had no insurable interest in the property itself. (*Harris* v. *Troup*, 8 Paige, 423; *Edgarton* v. *Peckham*, 11 Paige, 352.) Plaintiff's interest being an equitable interest, should have been made known to the insurer. (*Kernochan* v. *N. Y. Bowery Ins. Co.*, 17 N. Y., 438, 439.

Per ROSEVELT, J.)  The policy was void for want of mutuality.  (*Mead* v. *N. Y. Ins. Co.*, 7 N. Y., 530; *Westfall* v. *H. R. Ins. Co.*, 12 N. Y., 289; 2 Greenleaf's Ev., §§ 383, 406, and note 2.)  Plaintiff has failed to perform the conditions, and cannot recover.  (*Mead* v. *Ins. Co.*, 3 Seld., 530; *Westfall* v. *H. R. Ins. Co.*, 2 Ker., 289; 2 Greenleaf's, §§ 383 and 406, and note 2.)  Defendant had a right to be subrogated to plaintiff's rights under the contract.  (*Ætna Ins. Co.* v. *Tyler*, 16 W. R. 385, and per Chancellor, 397, 398.)

*Jacob B. Decker*, for respondent.  Plaintiff had an insurable interest in the property.  (*White* v. *H. R. Ins. Co.*, 7 How., 341; *Kernochan* v. *N. Y. Fire Ins. Co.*, 17 N. Y., 428; ROSEVELT, J. 441; 2 B. & A., 193; 1 Moody & Rob., 153; *Carruthers* v. *Sheddin*, 6 Taunt., 17; 1 Arnold, 252.)  The insurance was for Campbell's benefit, and there could be no subrogation.  (17 N. Y., 428.)

FOLGER, J.  It appears by the findings of the referee, that Campbell, the vendee of the property insured, by the contract of sale, agreed to pay the expense of insuring the factory and saw-mill; that the plaintiff did insure the property, and pay the premiums therefor, and charge the same to Campbell; and that by so much was lessened the amount paid by him on the purchase-price.  It appears from the testimony, that though Campbell did not know of this, yet that his brother, who acted for him with the plaintiff in adjusting, from time to time the payments and indorsing them on the contract, did settle the dealings which included these items of expense for insurance; so that the premiums of insurance were in fact paid by Campbell, under an agreement so to do.  It follows, then, that the insurance was really one for the benefit of Campbell.  (*Holbrook* v. *Am. Ins. Co.*, 1 Curtis C. C., 193, and cases cited.)

In such case, the defendants had no right of subrogation, even if they issued the policy, without notice of the contract of sale.  (*Benjamin* v. *Saratoga Ins. Co.*, 17 N. Y., 415; *Kernochan* v. *N. Y. Bowery Ins. Co.*, id., 428.)

Though the plaintiff's especial insurable interest was that of vendor, holding an equitable lien on the property for the security of the purchase-money, yet he held also the legal title, and this made it competent for him to cover, not only his especial interest in the property, but the property itself. (*Holbrook* v. *Am. Ins. Co., supra;* see, also, *Tyler* v. *Ætna Ins. Co.*, 12 Wend., 507; S. C., 16 id., 385; 1 Phillips on Ins., 347, sub-sect. 640; Angell on Ins., §§ 67, 185, 186, and note.)

And this insurable interest existed in the machinery as well as in the buildings; for though there was a contract of sale, it was executory. The title had not passed, and though Campbell went into possession about two years after the policy was issued, he had no right to remove the machinery, without the consent of Wood. There was never such a delivery of it to Campbell as gave him title. Wood still retained on it a lien for purchase-money, and a right, on non-payment to resume exclusive possession. He had, then, an insurable interest in it. (*Clinton* v. *Hope Ins. Co.*, decided in this court 4th April, 1871; see, also, *Burt* v. *Dutcher*, 34 N. Y., 493; *Tallman* v. *Atlantic Ins. Co.*, 3 Keyes, 87.)

The point made by the defendants, as to the use of kerosene, does not seem to be before us. There is no finding in reference to it. There is no request to find, which the referee has refused. The defendants' exception on this matter is two-fold. 1st. That the referee omitted to find, that the fire was caused by the use of an inflammable liquid. 2d. That the referee omitted to find as a conclusion of law, that the policy was void by a breach of the warranty against the use of such inflammable liquid. As to the first, it suffices to say, that there is neither finding nor proof that the use of an inflammable liquid caused the fire. As to the second, there is no finding of fact that kerosene or any inflammable liquid was used, and a conclusion of law that there was a breach of warranty from its use would be unfounded. Again, though it is proven that kerosene was used in the factory, that substance is not named in the condi-

tions annexed to the policy. It is only designated, if at all, by the phrase, "any other inflammable liquid." This phrase follows the mentioning by name of camphene, spirit gas, phosgene, etc., and it *noscitur a sociis*. To be warranted against, the liquid must be inflammable, as are those enumerated articles. But there is no finding or proof of the character of kerosene in this regard. The defendants ask us to take judicial notice of its qualities, and that it is in its nature, like those. If we do this, we are to know, that they are not only so slowly inflammable as to give harmless light by their gradual combustion, but that they are also suddenly explosive, and thus dangerous and harmful. It is this last characteristic inflammability, which is warranted against, in the classes of hazard upon the back of the policy.

But judicial notice comes in the place of proof. It is to be exercised by a tribunal, which has the power to pass upon the facts. That, this court has not in this case. We may not when we have not the findings of fact in review, for the purpose of reviewing the judgment of a referee, take judicial notice of the existence of a fact, which has not been found by the court below, nor upon which a finding has been refused. In the case in hand, that would be to put this court in the place of the referee, and to find a fact, which he was not requested to find, which he has not found, and to his omission to find which, no exception has been taken.

Nor do we deem, that judicial notice may be taken that in all cases, the article of kerosene is explosive.

The legislature has in effect declared, that there is a degree of purity to which it may be brought, and at which it may be kept on sale in cities with comparative safety. (Laws of 1865, chap. 773, § 3; laws of 1866, chap. 872.) The matters of which judicial notice may be taken, are those which must have happened according to the constant and invariable course of nature (Starkie on Ev., 9 Am. ed., 735 margin, 658), or are of such general and public notoriety, that every one may fairly be presumed to be acquainted with them. (1 Phillips on Ev., 5 Am. ed., 619 margin, 514, chap. 10, § 1.) The action of

the legislature seems to assume, that it is not inevitable nor a matter of general and public notoriety, that every grade and quality of this article is explosive. So the power and right to take judicial notice may not be here invoked, and it was incumbent upon the appellants, to make proof if they could, that the kerosene used in the building insured was in fact inflammable; i. e., explosive.

There is the same difficulty with the point made by the defendants upon the second paragraph of the tenth condition. There is no finding upon the matter by the referee, nor any request for him to find which he has disregarded. Apart from this, however, the point would be well met by the considerations previously advanced, that the premiums being practically paid by Campbell, under an agreement so to do, and the policy, in fact, taken for his benefit upon the property, rather than upon the debt against him, it is not held as a collateral security within the meaning of the condition.

The testimony admitted by the referee against the objection of the defendants, does not seem to us to affect the questions upon which the case turns, nor to have had an influence in its determination harmful to the defendants.

The judgment of the court below should be affirmed with costs to the respondent.

All concur.

Judgment affirmed.