## MOSES J. WICKS *against* FRANK BOWMAN.

Plaintiff agreed to convey to defendant, and defendant agreed to purchase, a lot of land with all the buildings and improvements thereon, and between the time of the signing of the contract, and the time fixed by it for the delivery of the deed, the possession and the payment of the purchase money, the building on the lot (which constituted its chief value) was destroyed by fire: *Held,* that defendant might refuse to complete his contract until the building was rebuilt.

APPEAL by plaintiff from a judgment of this court, entered on an order made at special term, overruling a demurrer to the special matter set up in the defendant's answer.

The complaint alleged, that on May 18th, 1872, the plaintiff was the owner in fee of premises in Brooklyn (describing them by metes and bounds), and that on said day the defendant made an agreement in writing with the plaintiff, whereby the plaintiff agreed to sell and convey, and the defendant agreed to purchase and take the said "lot of land, with all buildings and improvements thereon," for the price of eight thousand dollars, to be paid as follows : $500 on signing the contract ; $1,000 by executing a mortgage upon the premises ; $4,000 by assuming another mortgage ; and $2,500 in cash, on the delivery of the deed ; which was to be delivered on the 18th day of June, 1872.

That the said agreement, by its terms, bound the heirs, executors, administrators and assigns of the respective parties

thereto, and at the time of the making of the same, the defendant paid on account thereof, to the brokers who negoated the sale, the said five hundred dollars in cash.

That at the time of the making of said agreement, and at all times thereafter, up to the time of the commencement of the suit, the property was vacant and not occupied or used by any one.

The complaint then alleged an offer by the plaintiff to perform his part of the agreement, and a demand on and refusal by the defendant to perform his part of the agreement, and claimed $8,000 damages.

The answer, as a second defense to the action, alleged that at the time of entering into the contract, there was erected and standing upon the land a frame dwelling-house, of the value of $7,000 and upwards, and which was the chief value of the premises mentioned in said contract. That the same was entered into by defendant solely to acquire a residence for himself and family. That on or about the 29th day of May, 1872, this dwelling-house was totally destroyed by fire. That the defendant never had the possession thereof; that at the time of the alleged tender of said deed to this defendant, defendant offered and was ready to complete and perform said contract on his part, provided the plaintiff had erected, or caused to be erected on said lands, a dwelling-house similar to the one so destroyed by fire as aforesaid, which the plaintiff declined and refused to do.

To this second defense the plaintiff demurred for insufficiency, in that it did not state facts sufficient to constitute a defense. The court at special term overruled the demurrer, and the plaintiff appealed.

*Ward & Jones* and *Whitehead*, for appellant.

I. Upon the execution of a contract for the sale of real estate, the purchaser becomes vested with a title to the land as the owner thereof, and the vendor retains only a trust title, which he holds for the benefit of the vendee, and in which the seller has no right other than a lien for the unpaid portion of the

purchase money (*Swartwout* v. *Burr*, 1 Barb. 499; 2 Story's Eq. Jur. § 1212; Sugden on Vendors, vol. 1, ch. iv, p. 201, Hammond's edition, 1843 ; *Moore* v. *Burrows*, 34 Barb. 173; Crabb's Law of Real Property, vol. 2, pp. 544, 572, §§ 1760, 1761, 1797). (*a*) The vendee's interest in a contract for the purchase of land is real property, and descends to his heirs (*Hathaway* v. *Payne*, 34 Barb. 173; *Griffith* v. *Beecher*, 10 Barb. 432; *Champion* v. *Brown*, 6 Johns. Ch. R. 398; *Paine* v. *Miller*, 6 Ves. Jr. 349; Gerard's Titles to Real Estate, 152; *Swartwout* v. *Burr*, 1 Barb. 495). The widow of the purchaser is entitled to dower in the lands mentioned in the contract (3 Rev. Stat. 5th ed. §§ 84, 85, p. 199). (*b*) The vendor's interest in a contract for the purchase and sale of lands becomes personal property, and in case of his death pending the consummation of the contract, goes to his executors, and does not descend to his heirs (*Lewis* v. *Smith*, 9 N. Y. 502; *Adams* v. *Green*, 34 Barb. 176; *Hathaway* v. *Payne*, 34 N. Y. 103; *Moore* v. *Burrows*, 34 Barb. 173). (*c*) The vendee may sell or charge the estate before the conveyance is executed (*Seton* v. *Slade*, 7 Ves. 265; *Paine* v. *Miller*, 6 Ves. Jr. 349). (*d*) After contract of sale the vendor cannot charge the estate, either by suffering a judgment or by executing a mortgage (*Swartwout* v. *Burr*, 1 Barb. 495; *Laverty* v. *Moore*, 32 Barb. 347). (*e*) The vendee has an insurable interest in the premises specified in the contract of purchase, and may protect himself by insurance (*McKechnie* v. *Sterling*, 48 Barb. 330, 338 ; Angell on Insurance, § 66, 2d ed. pp. 116–118; *Wood* v. *N. W. Ins. Co.* 46 N. Y. 425).

II. Upon entering into a contract for the purchase of lands, the vendee becoming at once entitled to any benefit which may accrue by reason of any increase in the value of the premises, must bear the loss which may happen to the property between the time of the execution of the contract and the delivery of the deed (Sugden on Vendors, vol. 1, ch. iv, p. 336, Hammond's ed. 1843 ; Smith on Real Property, ch. ii, tit. xi, pp. 472, 474; Crabb's Law of Real Preperty, vol. 2, p. 544, § 1761; Fry on Specific Performance, *265; *Morgan* v. *Scott*, 26 Pa. St. R. 51; *Reed* v. *Lukens*, 44 Pa. St. R. 200; *Barker* v. *Smith*, 3 Sneed, 289; *Robertson* v. *Shelton*, 12 Bevan, 260; *Paine* v.

*Miller*, 6 Ves. Jr. 349 *et seq.*; *McKechnie* v. *Sterling*, 48 Barb. 335; *Mott* v. *'Coddington*, 1 Abb. Pr. N. S. 290, 298.

*Smith & Woodward*, for respondent.

DALY, Chief Justice.—The plaintiff agreed to sell and convey, and the defendant to purchase a lot of land, "with all buildings and improvements thereon," for $8,000. The contract was made on the 18th of May, 1872, and $500 of the purchase money was paid when it was signed. By its terms, the defendant was to assume an existing mortgage upon the premises to the amount of $4,000, to give a mortgage for $1,000, and the residue of the purchase money, $2,500, was to be paid in cash upon the delivery of the deed, on the 18th of June following. There was a frame dwelling-house upon the lot, of the value of $7,000, which was the chief value of the premises, and the plaintiff had a policy of insurance upon the house for $4,000. On the 29th of May, 1872, twenty days before the deed was to be delivered, the dwelling-house, which constituted seven-eighths of the value of the whole property, was destroyed by fire. On the 18th of June following the plaintiff tendered a deed, and demanded payment of the $2,500, and the assumption and execution by the defendant of the mortgages referred to, which the defendant refused to do, unless the plaintiff would rebuild the house. The plaintiff then brought this action to recover damages for the non-performance of the contract. Judge ROBINSON held, upon the trial, that as the defendant was not in possession under the contract, nor entitled by its terms to go into the possession, at the time when the dwelling-house was burned, the loss arising from its destruction did not fall upon him, but upon the vendor, who until the 18th of June, the day fixed for the delivery of the deed and the payment of the residue of the purchase money, was entitled to the possession, and the beneficial enjoyment. That the vendee was not bound to accept the lot without the dwelling-house, which constituted seven-eighths of the value of the premises he had contracted to buy. That the plaintiff did not and could not tender a conveyance of what he

had contracted to sell, the "lot with the buildings thereon." That there was therefore no tender of performance on his part of the contract, which was essential to a breach, and that consequently he had no cause of action.

It is insisted, upon this appeal, that the defendant, as vendee, is to be regarded in equity as the owner from the time of the making of the contract, and that therefore the loss arising from any diminution in the value of the premises, by accident or otherwise, must fall upon him, and not upon the vendor, who simply holds the property thereafter as security for the purchase money.

It is undoubtedly well settled by the English cases, that in contracts for the sale of lands, the vendee, from the time that his right to a conveyance is complete, is considered as the owner of the premises (Sugden on Vendors, by Hammond, vol. 1, c. iv, p. 201 ; 2 Crabb's Law of Real Property, §§ 1760, 1761, 1797). In the language of Lord Eldon, in *Paine* v. *Miller* (6 Ves. 252), the premises are his to all intents and purposes. They are vendible as his, chargeable as his, capable of being encumbered as his, may be devised as his, may be assets, and would descend to his heir. This was said in a case where the purchaser had expressed himself satisfied with the title, but before the conveyance was prepared the houses were destroyed by fire; but Lord Eldon was of opinion that the vendor's right to a specific performance was not affected by the accident. He illustrated the rule by saying that if, after the buildings were burned down, the land should become more valuable, in consequence of the selection of the locality for some public improvement, it would be no answer to the vendee to say that he should not have it, because it had thereby increased in value. It was said in *McLaren* v. *Hartford Fire Ins. Co.* (5 N. Y. 151), upon the authority of *Ex parte Manning* (2 P. Wms. 410), and *Ex parte Minor* (11 Ves. 559), that after the confirmation of the master's report for a sale of real estate in chancery, and before a conveyance is excuted, the vendee, as equitable owner, is entitled to all the advantages arising from the increased value of the property, and must sustain the loss of its depreciation, and that the general prin-

ciple established by these adjudications is applicable to sales of land with us.

The vendee under a contract for the sale of real property is, for many purposes, to be regarded and treated as the owner from the time that his right to a conveyance is complete, especially where nothing remains but to pay the purchase money, take the conveyance and enter upon the possession. This was the case in *Paine* v. *Miller* (*supra*), before Lord Eldon, where the vendee's solicitor, after a long investigation by him, and after certain trustees had agreed to unite in a conveyance to release certain incumbrances, declared himself to be satisfied with the title. A draft of a conveyance was sent to him, the draft was returned, the deeds were engrossed, and an answer received that the deeds would be ready in two or three days, and on the day after the solicitor declared that he was satisfied, and accepted the title; but before the deeds were executed the buildings upon the land were destroyed by fire. Under such a state of facts, the vendee was treated in equity as the owner, his right and title to the property then being complete. He had the right, before the buildings were destroyed, to a specific performance, and was consequently not excused by the occurrence of the accident from performing himself; and so where a master's report for a sale of real estate in chancery is confirmed, the same result follows, for there is nothing then but to pay the purchase money and take the deed. Questions may arise in equity, in the adjustment of interests growing out of rights to real property, as to who is entitled to benefits or who is to sustain losses pending the negotiations, or intermediate the contract of sale and the time of performance, in which the benefits may be adjudged to or the losses imposed upon either the vendor or the vendee, the vendee being, under certain circumstances, regarded as the owner, and, under other circumstances, as not (see *Spurrier* v. *Hancock*, 4 Ves. 667 ; *Hartford* v. *Purrier*, 1 Madd. 287 ; *Ex parte Minor*, 11 Ves. 559, and many other cases).

As the contract contemplates the subsequent conveyance of the property to the vendee, it is right that the equitable interest he acquires by it in the land should, for certain purposes, pos-

sess the characteristics of real estate : that it should descend to heirs, instead of passing as personal property to his executors (*Champion* v. *Brown*, 6 Johns. Ch. 398) ; that it should be sold by the order of the surrogate as if it were land (3 Rev. Stat. 5th ed. 199, § 78) ; and that the widow should be entitled to dower in the surplus arising from such a sale (Id. §§ 84, 85).

But although the vendee will be regarded, for many purposes, as the owner, he is not so for all purposes. The legal title is in the vendor ( *Wood* v. *N. W. Ins. Co.* 46 N. Y. 425), and there are many rights of an owner which a vendee under a contract of sale cannot exercise. He cannot, unless he has the possession, or is by the terms of the contract entitled to the immediate possession, maintain ejectment; or bring trespass for an unlawful entry upon the land ; or trover for converting and carrying away the fixtures (*Tabor* v. *Robinson*, 36 Barb. 486). It is doubtful, moreover, where he has not the actual, or is not entitled to the immediate possession, if he has an insurable interest, for in all the cases that I have been able to find in which it has been held that he had such an interest, he had either the actual, or was entitled to the immediate possession (*McGivney* v. *The Phœnix F. Ins. Co.* 1 Wend. 85 ; *The Ætna F. Ins. Co.* v. *Tyler*, 16 Id. 385, 396 ; *Shotwell* v. *The Jefferson Ins. Co.* 5 Bosw. 257 ; *McKechnie* v. *Sterling*, 48 Barb. 330 ; *Columbian Ins. Co.* v. *Lawrence*, 1 Pet. U. S. 25 ; *Hough* v. *The City Fire Ins. Co.* 29 Conn. 10 ; 1 Phillips on Ins. § 181). Under a contract for the sale of land, by the terms of which the payment of the purchase money and the delivery of the deed are to be concurrent acts at a future day, the vendee's right to a conveyance (applying Lord Eldon's rule) is not complete until that day, and he cannot before that day be regarded as the owner. His position, intermediate the contract and the time of performance, is thus defined by a very able judge (Judge Brown) in *Tabor* v. *Robinson* (36 Barb. 486): "He has an equitable interest in the land and a right to a specific performance of the contract by the execution and delivery of the deed at the time appointed; but there must also be performance and payment on his part at the same time. He is *not the owner of the property purchased until the happening of* these events. The contract may or may not

be performed ; but until it is performed on his part he is not vested with the right of property, and could not assert the legal rights or claim the legal remedies which belong to those who own the title.   He is entitled to the usual remedies of those who have equitable interests to prevent waste, injury and alienation to others, until the time appointed to execute the contract, and that is all." This was approved in *Smith* v. *McClusky* (45 Barb. 612), which was a case substantially like the one now before us.   It was a contract for the purchase of land, payable by installments, but in which there was no stipulation giving the vendees the right to occupy.  The installments for three years had been paid, and the vendees were in occupation. They were notified to quit by the vendor, and did so, and afterwards, before the remaining installments were paid, and before possession could be claimed, the building, which constituted the principal value of the premises, was destroyed by fire.   This, it was held, operated to discharge the vendees from all liability for the installments thereafter to become due.   The circumstance that the vendees were not in possession, and had no right to occupy until the final installment of the purchase money was paid, was relied upon by a very able court for the conclusion that the vendor had not parted with the title *nor the possession* when the disaster occurred, and as the disaster rendered it impossible for him to deliver the substance of what was agreed to be transferred, there was a failure of consideration as to the chief matter of the contract, and that that was a good ground why the contract should not be enforced.

The vice-chancellor, Sir Thomas Plumer, said, in *Hartford* v. *Purrier* (1 Madd. 287), that if a contract for the purchase of land is to be completed at a given period, and the title is finally found to be good, the estate is considered as belonging to the purchaser from the date of the contract, and the money from that time as belonging to the vendor.   That if the estate in the interval is improved, or if its value is lessened from any cause, there being no fault on either side, the vendee has the benefit, or sustains the loss.   That if there is a loss by fire, after the contract but before its completion, neither party being in fault, the loss falls upon the vendee.   This is in conflict with the

Wicks v. Bowman.

cases above referred to, and if it had been said by Sir Thomas Plumer's eminent predecessor Sir William Grant, or by Lord Eldon, I should have hesitated before calling in question its correctness. But Sir Thomas Plumer was not, in the opinion of his cotemporaries, one of those judges whose mere statement of the law carries with it the weight and authority that is accorded to judges of great eminence. Sir Samuel Romilly, one of the ablest equity barristers of his time, says, in his diary: "A worse appointment than that of Plumer to be vice-chancellor could hardly have been made. He knows nothing of the law of real property, and nothing of the doctrines peculiar to courts of equity" (Life of Romilly, vol. 1, pp. 310, 481, 3d Lond. ed.) It was, moreover, not material to the decision of the case before him, which was that the vendee, under a decree for a specific performance, was not entitled to an abatement from the purchase money for the loss of a tenant, who left in consequence of the vendee's own unnecessary act. It was merely *dicta*, and coming from a judge who, after this decision, when he was made master of the rolls, was generally regarded by the profession as not capable of discharging the duties of the office (Id. 481), it does not call for serious consideration.

The doctrine that the vendee is to be treated, in certain cases, as the owner, is founded in the application of the equitable maxim, that what ought to be done is considered in equity as done (2 Crabb's Law of Real Property, §§ 1759, 1760, 1761 ; 2 Story's Equity Juris. § 1212), a maxim that does not apply where the cotemporaneous acts—the payment of the purchase money, and the delivery of the deed—were to take place upon a day subsequent to the time when the building was destroyed by fire. "The common doctrine of courts of equity," says Story, " is, that where things are agreed to be done, they are to be treated, for many purposes, as if they were actually done." Thus, if the payment of the purchase money and the delivery of the deed did not take place on the 18th of June, 1872, the time fixed by the contract, but took place afterwards, they would, by the application of this doctrine, be deemed in equity to have occurred on that day ; and the vendee would on that day, and thenceforth, be regarded as the owner. But they

cannot be deemed to have actually occurred before, for that the parties did not intend; and there is no warrant, therefore, in this maxim, for holding that the vendee did or could, before that day, become the owner.

Where the vendee is let into the actual possession, or has by the contract the immediate right to it, there is a reason for his bearing the loss, if the building is subsequently destroyed by fire, as he has entered upon the beneficial enjoyment of the property (*Ætna F. Ins. Co.* v. *Tyler*, 16 Wend. 396). It may then be likened to the case of a tenant who, after entry, must pay the rent which he has covenanted to pay in the lease, though the building should afterwards burn down; but who is discharged from the payment of it if the building should be destroyed between the time of the signing of the lease and the commencement of the term, because, before entry, he has no estate, and the landlord, by reason of the destruction of the building, cannot deliver possession of the premises in the same condition substantially as they were in when the lease was made (*Wood* v. *Hubbell*, 5 Barb. 601; *Cleves* v. *Willoughby*, 7 Hill, 83; 4 Kent's Com. 96). While, therefore, it may be equitable and just that the vendee should bear the loss where the building is burned down after he enters upon the possession, it is not just nor equitable to impose it upon him whilst the vendor is in possession of the premises.

As it is, moreover, doubtful whether the vendee has any insurable interest without the possession, or the immediate right to it, and there is no doubt that the vendor has (*Wood* v. *The Northwestern Ins. Co.* 46 N. Y. 421), the loss should fall upon him, as he can protect himself fully by insurance.

For these reasons, I am of the opinion that the judgment should be affirmed.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment affirmed.