Johnson, J.
Three leading questions were decided by the court below:
1. A question of fact, as to whether there was any mistake or omission of any of the terms of the contract, in the indenture executed by the parties.
2. Upon the contract actually made, was the plaintiff below, under the circumstances of the case, legally entitled, upon electing to purchase, to have the insurance-money received by Ives credited on the purchase-money?
3. If he wTas, then did he make a case entitling him to a specific performance of the contract ?
1. On this question of fact the supreme court finds, “ that there was no mistake, neglect, oversight, or omission to *289 reduce said agreement to writing, but the writing expresses the said agreement between the parties.”
The defendant in error does not complain of this finding, and it is therefore conclusive in this action. The contract, as written, is to be taken as the only one between the parties.
2. The plaintiff in error complains of the conclusion of law, drawn from a construction of the contract, to the effect that the insurance-money collected by Ives, was “ to inure to the benefit of plaintiff, as a credit on the purchase-money, if he elected to purchase the property,” and that under the facts as found, he was entitled to have a specific performance, with a credit on the purchase price to the amount of the insurance-money received by Ives.
In considering whether the plaintiff' is entitled to a specific performance with such credit, there necessarily arises two considerations: 1. Whether, by a fair interpretation of the terms of this agreement, it was the intention of the parties that this insurance money was to inure to plaintiff’s benefit in case of an election to purchase, made after the fire; and 2. Whether the plaintiff who comes into a court of equity seeking a specific relief in equity, is entitled, upon the particular facts of this case, to the relief asked.
It appears that at the time he negotiated for the lease, Port knew the relation Ives stood to the property as a mortgagee, and that the stipulations as to this insurance on the property were insisted on and insei’ted in the lease at Gilbert’s instance and for Ives’ security and safety, and not at the instance of Port, who, as appears by the evidence, was reluctant to pay for so much insurance.
It further appears that the policies of insurance provided for, were taken out by Port, through his agent, Bradstreet, in the name of Gilbert, “ loss, if any, payable to George M. Ives, mortgageeand that the monthly installments of rent, due October 20th, November 20th, December 20th, January 20th, and February 20th, amounting to $8,333.33, were unpaid.
*290 It also appeared that lie had continued in possession of the premises, and had not availed himself of his right to surrender the premises and determine the contract, which he might have done upon failure to rebuild.
Under these circumstance, could the defendant make an election to purchase on the 12th of March, 1868, and be then entitled to have the insurance-money credited on the purchase-money ?
By tbe terms of the contract, the time within which tbe election to purchase might be exercised, was expressly fixed, “ at or before the expiration of the year,” from March 20, 1867.
This election was made within that time, but the right to make such election and demand performance depended on his having performed all conditions precedent on his part.
If during the year he elects to purchase, “and having paid all the said rents, taxes, assessments, and premiums, as herein provided, shall then pay to the party of the first part, or his representatives, the sum of $10,000, and shall execute his notes to the party of the first part, secured as hereinafter provided, for the sum of $52,500,” etc.
When Port made his election he was in default, as a lessee, for the non-payment of five months’ rent, which should have been paid monthly in advance.
When the money was received by Ives from the insurance companies, December 16, 1867, Port was in default for two months’ rent, due October 20th and December 20th, = $3,333.33.
lie neither paid nor offered to pay within a reasonable time; but he claims that the election to purchase, -made in March following, operates by relation as a payment of these past due rents, and relieves him. from fault in that regard; that such election relates back to the date of the lease, and cures any defaults of which, as a tenant, he was guilty, and that this election, subsequently made, operates in equity as a full performance of all his obligations as a tenant as well as his covenants as a vendee.
We think it too clear for argument that this instrument *291 was a lease, with the privilege of purchase, and that until option declared, the relation of lessor and lessee existed, with all the advantages and liabilities which that relation imposed. Until such election was rightfully made, Port was a lessee, with an option to purchase, and nothing else, so far as the question before us is concerned.
As such lessee, when the fire occurred, the contract gave him no right to the insurance, and the evidence tends strongly to show that he did not then claim it.
The only question, therefore, really in the case is, whether the election he made, March 12, 1867, relates back beyond the date of the fire, so as to give Port the benefit of the insurance.
It is claimed that upon making this election, in March, 1867, the relation of vendor and vendee subsisted, and as Port had paid a consideration for the right of election, and also had paid the premiums for the insurance, he must be regarded as, in equity, a vendee when the fire occurred.
As a sequence, it is further claimed that Gilbert and Ives became trustees for the vendee by this election, and that the insurance money, which up to that time belonged to them, subject to his optional rights, was converted into a payment on the back rents and an advance payment of the purchase-money.
This being a lease, with an option to purchase, it must receive such construction as will efieet both purposes.'
Some of its provisions apply to a lease only, some to a simple option to purchase, and some to both characters of the paper.
No construction is admissible which would defeat or ignore this double aspect.
As a lessee, Port was to pay, as rent, $20,000 for the term of one year, in monthly installments, in advance, as well as the taxes, assessments, and premiums of insurance to be obtained for “ Gilbert’s benefit,” not exceeding $50,000; and wras to put and keep the premises in good repair, except in case of fire, when he might abandon.
*292 These obligations he was bound to perform, whether he elected to purchase or not.
The right to purchase could not be exercised except on the terms stated. It depended on Port’s having paid all the rents, taxes, and assessments, and upon his paying $10,000 in cash, and securing the residue of the purchase-money, $52,500.
At the time of the election he owed $8,333.83 rent, and by such election he owed $10,000 more. These amounts, it is claimed, are paid by such election, and it is further claimed that the residue of the insurance money shall be applied toward the payment of the $52,500.
This claim is based on the application of a recognized principle in equity, that, as between vendor and vendee, the former is a trustee of the latter, and as such, the receipt of insurance money on account of loss to the estate is for the benefit of the vendee.
The rule is thus stated in Sugden on Vendors, .8 Am. ed. (291), ch. 7, sec. 2:
“ A vendee, being equitable owner of the estate from the time of the contract for sale, must pay the consideration for it, although the estate itself be destroyed between the agreement and the conveyance; and, on the other hand, he will be entitled, to any benefit which may accrue to the estate in the interim, although this was not always the rule. But, now, if after the contract, and before the conveyance, the houses were burned down, the loss will fall upon the purchaser, although the houses were insured at the time of the agreement for sale, and the vendor permitted the insurance to expire without giving notice to the vendee. If, however, the vendor has, before the fire, broken his contract, e.,g. to repair or alter the property, the subsequent loss will not fall on the purchaser. And where the estate is leasehold, and the want of an insurance gives the lessor a right to enter for a forfeiture, the conduct of the seller, in insuring only for a short period without notice to the purchaser, may induce the court to refuse to enforce the contract after the policy has expired; but the case in which this point was decided *293 shows that a purchaser should himself inquire about the insurance, at all events after the time appointed for completing the contract, and should, if necessary, advance the money to keep the insurance on foot after that time.”
In such case: “ Equity looks upon things agreed to be done, as actually performed; consequently, when a contract is made for sale of an estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase-money for the vendor.” Insurance Co. v. Updegraff, 21 Penn. St. 513; Reed v. Lukens, 44 Penn. St. 200; Hill v. Cumberland Valley Ins. Co., 59 Penn. St. 474.
In Etna Fire Ins. Co. v. Tyler, 16 Wendell, Chancellor Walworth says : “ If this be the true principle upon which, notwithstanding an alienation by executory contract of sale, the vendor, under a valid and subsisting contract for the purchase thereof, whether he has paid the whole of the purchase-money and gotten the legal title or not, is called the owner thereof, and the property is usually called his by others. In equity, it is, in fact, his, and the vendor has only a lien thereon for the security of Ms unpaid purchase-money; and I am yet to learn that the person who is in the actual possession of property as the real owner thereof in equity, and who must sustain the whole loss primarily in case of its destruction by the perils insured against, can not insure it as owner, unless there is something in the terms of the policy, or in the conditions referred to therein, requiring the true state of the legal title to be disclosed.” Wood v. N. W. Ins. Co., 46 N. Y. 421.
The vendee, because he is the equitable owner, and, as such, is compelled to sustain the loss, occurring after the sale and before the conveyance, is entitled to any benefit that may accrue to the estate.
The rule can not go beyond the reason of it. At the time of the loss, and when the money was received by Ives, Port was not the owner; there was then no subsisting contract for the purchase, the loás did not fall on him, and the reason did not then exist for giving him the benefit of the insurance.
*294 In equity, things agreed to be done are looked on as actually performed, and if the vendee is not in default, the vendor is his trustee of the estate, and the vendee is trustee of the purchase-money.
In this case, no such relation subsisted. The test for the application of this rule is, who was the owner, and upon whom did the loss fall? If there was a valid and subsisting contract of sale, whether the purchase-money was all paid or not, so that, in equity, the vendee was owner, then the loss by fire fell on Port, and the receipt of indemnity for that loss by the vendor is for the benefit of the vendee.
“Where property, real or personal, is destroyed by fire, the loss falls on the owner at the time.” Wills v. Culvan, 107 Mass. 514.
“ Where the contract has been completely made, the thing sold is at the risk of the purchaser, who must bear all subsequent losses, and is entitled to all subsequent gains.” Ery on Specific Perf. 600.
“ The true test in determining which party should bear the consequences of an accidental fire pending a contract of sale is, which was the owner at the time ?”
The provisions of the contract strongly negative the claim of Port, and give force almost unanswerable to the opposite view.
It was stipulated that this insurance was for “ Gilbert’s benefit.” He was the owner, and because, in case of fire, the loss would be his, he insisted urgently on this insurance Both parties knew that it was for the security of Ives, who, as mortgagee, was the real party in interest. The petition states it was “ to keep good Ives’ mortgage security.”
The contingency insured against was loss to Gilbert, in case he was the owner at the time.
Had the purchase been absolute, the insurable interest of Gilbert would have been to the extent of his lien for the unpaid purchase-money only. In this state of things, Port executes this contract, without any provision giving him the benefit of the insurance in case of his election to purchase.
*295 Tie agrees, in case of purchase, to effect other insurance, to secure the balance of the purchase-money, and for his especial benefit provides for this very event, not by an interest in the insurance, but by giving him the right to abandon in case of fire, and be released from further payment of rents.
It seems clear that, at the time of the fire, Gilbert was the owner of the property, and the loss was his loss. The insurance money was the indemnity for that loss. When it was paid to his assignee, it was for his benefit, as expressed in the contract. As the purchase was to be at Port’s option, it became necessary that Gilbert’s interest as owner should be insured.
It seems equally clear that at the time of the fire the relation of vendor and vendee did not exist. Port was not the equitable owner; his possession was as tenant of Gilbert, and all the loss he sustained by the fire, not expressly provided against by the lease, was the damages resulting to him, as the holder of such option, by being deprived of his right to exercise it, unless he chose to exercise it, notwithstanding the fire.
The contract provides for two kinds of insurance, both to be paid for by Port, and both for Gilbert’s benefit.
This shows the minds of the parties were directed to this point, and the absence of any provision for Port’s benefit, in case of his election to purchase, is suggestive. The fact that he agreed to procure this new insurance in case of purchase, to secure the unpaid purchase-money, and the further fact that there is provision for his benefit in case of fire and failure to repair by Gilbert, whereby he was released from further payment of rent, very strongly tend to show that it was not contemplated by Port that he would elect to purchase in case of fire. This view comports with the covenants of the contract as expressed, and the legal relations created by it under the circumstances.
In Paine v. Meller, 6 Ves. 349, Lord Eldon says, in speaking of the rights of a vendee to the insurance in case of loss: “ If the party, by the contract, has become the equi *296 table owner of the premises, they are his to all intents and, purposes. They are vendible as his, chargeable as his, capable of being indumbered as his; they may be devised as his, they may be assets, and they would descend to his heirs.”
In Gates and others v. Smith, 4 Ed. Ch. 702, this language of Lord Eldon is declared to be “the true and correct doctrine of equity” to determine the right of a vendee to the insurance in case of loss.
The principles invoked relating to equitable conversion do not aid us in the determination of this ease.
The rule is : Equity looks upon things agreed to be done as actually done, consequently when a contract is made for the sale of an estate equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase-money for the vendor.
What was agreed to be done, and of what estate sold is the vendor a trustee, depends on the contract. So, if we concede that these rules apply to optional contracts, as well as to those absolute, still we must look to the contract to determine to what extent a conversion takes place, and in doing so it must be remembered that this equitable fiction rests upon the principle that it enables a court of equity to give the vendee all the relief to which by his contract he is entitled. It is not an invention to confer upon him rights he does not possess, but to furnish relief which a court of law could not give arising out of the contract.
It goes only to the form of relief, and not to create an estate in the vendee.
It converts the title and estate with all the incidents annexed in the hands of the vendor into a trust estate for the vendee, and shapes the relief to make that trust beneficial. It holds the trustee accountable as such according to the terms of the contract by considering that done which he has contracted to do. The vendee, as owner in equity, sustains whatever losses happen, and is entitled to all the gains and profits of the estate contracted to be sold. It relates to the estate sold, and to such fixtures, appurtenances, *297 and incidents as adhere to it, and to such provisions as are found expressed in the contract relating to the sale of the estate; but it does not attach incidents not granted nor insert stipulations not found in the contract. We are therefore remitted back to the terms of the contract* in order to ascertain its terms before we can apply this doctrine instead of applying the doctrine to find out the terms of contract.
The contract of insurance is not attached to nor an incident of the estate contracted to be sold. It is purely a personal indemnity to the owner of the property insured, and does not pass to the purchaser of the thing insured. McDonald v. Adm’r of Black, 20 Ohio, 192.
In Pool v. Adams, 33 Law Jour. Ch. 638, it was held that, in the absence of a provision in his contract of purchase of real estate, the purchaser is not entitled to the benefit of an existing insurance against fire, though the loss happened between the date of the contract and the conveyance, and that the amount received by the vendor could not be applied as a credit on the unpaid purchase-money.
This was placed on the ground that there was no provision in the contract that the purchaser shall have the benefit of the insurance, and therefore it was clear that the vendor had an action at law to recover the whole purchase-money, though the property had burned down.
Townley v. Bedwell, 14 Vesey, 591, was the case of a lease with an option to purchase. It was held that the rents until the option was declared belonged to the heir; but from that time the conversion takes place, and the purchase-money belongs to the personal representative.
Equity only regards that done which was contracted to be done. As the insurance was not attached to, nor an incident of the thing contracted to be sold, but is purely personal, we must look to the terms of the contract to determine Port’s right to an interest in the insurance. There is no express stipulation for such interest. Does it arise by implication of law?
Gilbert’s insurable interest as owner would cease on completion of the contract of sale. The policies were taken out *298 by Port in the name of Gilbert for the benefit of Ives’ mortgage, without reserving to himself an interest in case of' election. They provide that no assignment of them shall be valid without the assent of the insurers.
The completion of this contract as a purchase would have avoided the policies. By its terms there was to be an immediate conveyance with mortgage back. They never contemplated a subsisting executory contract of sale, nor any relation of vendor and vendee to which an equitable trust could apply, as Port would become the legal owner of the property by a performance by the parties of what each contracted to do upon election made.
There would then be nothing of the estate contracted to be sold in Gilbert’s hands to which the doctrine of equitable conversion could apply, or could be held in trust, except upon default of one or both the parties. The relation of vendor and vendee, out of which equity creates a trust in certain cases, would not exist. Port, by stipulating for a deed, thereby relieves Gilbert from holding the estate for him, and he becomes the legal owner. There would be no estate, title, or interest in Gilbert to hold in trust, nor any “ subsisting contract for the purchase,” nor anything “ agreed to be done no time “ between the agreement and the conveyance,” as the rules quoted require to create the trust.
The contract also provides that the deferred payments in case of election, $52,500, should be “payable monthly in advance in twenty-four equal installments, with interest from the time of purchase.” The “ time of purchase ” is the time when Port elects to purchase. It does not by election relate back to the date of the contract, and impose upon the lessor a trust that did not then and might never exist.
Upon election to purchase, the contract becomes an absolute agreement for the sale of the real estate, and in such case Sugden [188] says: “ When an estate is contracted to be sold, it is in equity considered as converted into person-alt]) from the time, of the contract, and this notional conversion *299 takes place although the election to purchase rests merely with the purchaser.” This sentence is supported by a citation of numerous cases, and is relied on to support the claim here made.
Conceding its correctness, and applying to the case at bar, it only operates to convert the real estate into personalty.
The learned author is discussing the effect of a devise of real estate, on lands contracted to be sold and not conveyed.
Thus, in Fletcher v. Ashton, 1 Bro. Ch. Cas. 497, it is said nothing is better settled than that land directed to be sold and turned into money is to be considered as converted into money. To the same effect is Craig v. Leslie, 3 Wheat. 577; Postell v. Ex’r of Postell, 1 Desaus. 173; Pegg v. Wisden, 16 Beav. 243.
As to the time when this contract became a purchase and the effect of the doctrine of notional conversion, we refer to Pegg v. Wisden, 16 Beavan, 243. That was a lease with an option to purchase within nine years, upon giving three months’ notice.
The Master of the Rolls says: “I am of the opinion that at the expiration of the three months from the 14th of May (the date of the notice), the relation of vendor and purchaser loas constituted between the parties, and that the plaintiff ceased to be tenant and in equity became the owner of the estate.”
The effect of the application of this rule as to conversion extends only to the estate contracted to be sold. It does not operate to create new rights, nor operate backward so as to destroy the relation of lessor and lessee, which continued until election. No case can be found where this principle is applied, unless the trust relation existed as to the estate or property sold. When that relation exists, and the loss is sustained by the purchaser, the receipt of the insurance money inures to the benefit of the vendee.
The conversion operates on the estate and not on personal rights of the vendor not contracted to be sold. It is evident that the parties did not contemplate an election in case of fire nor until the end of the year, and these facts would make Post indifferent as to any provision giving him the *300 benefit of this insurance in case of loss, as he intended to rely on his right to abandon and be released from the obligation.
His contract after the fire, as shown by the evidence, until after the money had been received and otherwise applied, confirms this view. The claim, therefore, that upon the election to .purchase, made five months after the fire5 and three months after the money received and otherwise applied, creates the relation of vendor and vendee from the date of the lease, so as to constitute the former a trustee from the beginning and accountable as such for insurance effected for his benefit, and relieve the vendee from his defaults as a lessee by converting Gilbert’s loss into a loss by Port, who was only lessee at the time, is, in the opinion of the court, untenable.

Judgment reversed and cause remanded.